RONALD J. NOVOTNY AND NANCY A. NOVOTNY, APPELLEES, V. ELLIS MCCLINTICK, INDIVIDUALLY, TRADE-IN HOMES, A COPARTNERSHIP, AND ACTION ENTERPRISES, INC., DOING BUSINESS AS ACTION REAL ESTATE CO., APPELLANTS.

291 N. W. 2d 252

Filed April 23, 1980. No. 42546.

William E. Pfeiffer of Spielhagen, Pfeiffer, Miller & Weingarten, Associates, for appellants.

Frank Meares, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

This is an action brought by Ronald J. and Nancy A. Novotny (Novotnys), husband and wife, appellees herein, against Ellis McClintick (McClintick), Trade-In Homes (Trade-In), and Action Enterprises, Inc. (Action), appellants herein, for damages caused by the appellees' reliance on certain purportedly fraudulent misrepresentations made during the sale of property purchased by the appellees from Trade-In Homes. Appellants denied the Novotnys' claims and cross-petitioned for money allegedly due them under the terms of the purchase agreement. Evidence was adduced from which the jury returned a verdict for appellees on their claim in the amount of $3,500, and also for appellants in the amount of $315.39. We reverse and remand.

The facts involved herein are not in substantial conflict. The residence which is the subject of this

action is located in Bellevue, Nebraska. It appears from the record that James O. May and his wife, Peggy S. May, the previous owners of the property, on May 12, 1977, entered into a listing agreement with Action for the sale of the property. On that same date, the Mays entered into an agreement with Trade-In, a partnership comprised of the president and the managers of Action, whereby Trade-In agreed to purchase the home at a price which would guarantee the Mays a net profit of $14,123 should Action fail to sell the property prior to August 12, 1977, to a suitable purchaser for a price of $57,950, or more. The Mays subsequently left this state and moved to Alaska, arriving there on August 9, 1977.

The Novotnys became interested in the property in the latter part of July 1977. They were looking for a residence to purchase in the Bellevue area and examined the property involved herein at that time. When they inspected the residence, the Novotnys were informed by *their* realtor that the owners of the house had moved to Alaska. Subsequently, on August 8, 1977, the Novotnys made an offer to purchase the home for $50,000, which offer was to remain in effect until August 11, 1977. On August 9, their offer was rejected and a counteroffer was made to the Novotnys in the amount of $55,000, purportedly pursuant to a "telecon" which McClintick, the listing agent, had with the Mays on that date. The counteroffer was to remain in effect until August 11, 1977, the final date on which the residence could be sold before the "guarantee to purchase" agreement became operative.

The Novotnys did not act on the counteroffer by August 11, 1977. However, because they "liked the property very much," they made a second offer to purchase on August 15, 1977, for the amount of $53,500. This offer was accepted by Trade-In the following day, August 16, 1977. Trade-In was the owner of the property on that date under the terms

of the "guarantee to purchase" agreement it entered into with the Mays, the effective date of the listing contract having passed without an appropriate buyer being obtained and the Mays having executed a deed to the property to Trade-In on August 10, 1977. Trade-In entered into a listing agreement with Action for the sale of the residence on August 15, 1977. Trade-In's acceptance of the Novotnys' second offer was conditioned on their understanding that the seller, Trade-In, was a licensed Nebraska real estate broker. The purchase contract contains the Novotnys' written acknowledgment of this fact, dated August 17, 1977.

On the date of closing in October, a dispute arose as to the amount of taxes that the Novotnys were obligated to pay under their agreement with Trade-In. Following this dispute, the Novotnys, for the first time, learned of the August 10, 1977, transfer from the Mays to Trade-In. It appears that this transfer was for a lesser total amount than that originally offered by the Novotnys, although the amount netted by the Mays was greater under the "guarantee to purchase" agreement than it would have been under the Novotnys' first offer.

The Novotnys thereafter commenced this action alleging that they suffered damages in the amount of $3,500, which was the difference between their original offer and the accepted offer, due to their reliance on purported misrepresentations made by the appellants. As previously stated, appellants answered denying the Novotnys' claims and cross-petitioned for the amount withheld by the Novotnys from the agreed purchase price for the amount of taxes disputed, and for the cost of a termite inspection. Following a trial to a jury, a verdict was returned for the Novotnys in the amount of $3,500 and for the appellants in the amount of $315.39, the amount of the disputed taxes and the termite inspection. This appeal is from that verdict, wherein four

errors are assigned to the proceedings below. However, we need concern ourselves with only one of such assigned errors.

Appellants contend that the trial court committed error in overruling their motions for a directed verdict. They claim that the Novotnys failed to present sufficient evidence to establish a cause of action for fraudulent misrepresentation. We agree.

It is the general rule that in every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it and upon whom the burden is imposed. *Moats v. Lienemann*, 188 Neb. 452, 197 N.W.2d 377 (1972); *Renna v. Bishop's Cafeteria Co.*, 192 Neb. 33, 218 N. W.2d 246 (1974); *Humphrey Feed & Grain, Inc. v. Union P. R. R. Co.*, 199 Neb. 189, 257 N.W.2d 391 (1977); *Bassinger v. Agnew, ante* p. 1, 290 N.W.2d 793 (1980). A motion for a directed verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed; such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be drawn from the evidence. *Egenberger v. National Alfalfa Dehydrating & Milling Co.*, 164 Neb. 704, 83 N.W.2d 523 (1957); *Humphrey Feed & Grain, Inc. v. Union P. R. R. Co., supra.*

We conclude, from our review of the record, that the Novotnys failed to present sufficient evidence to submit the issue of the alleged falsity of the representations to the jury. The elements which must be alleged and proved to sustain an action for fraudulent misrepresentation are: (1) That a factual representation was made which was known to be untrue by the party making it or which was recklessly

made; (2) That the representation was made with the intent to deceive and to induce action on the part of the other party; and (3) That the other party did, in fact, rely on the representation and acted thereon, thereby sustaining injury. *Page v. Andreasen,* 200 Neb. 641, 264 N.W.2d 682 (1978); *Moser v. Jeffrey,* 194 Neb. 132, 231 N.W.2d 106 (1975).

The Novotnys, in their petition, alleged that appellants represented that the owners of the residence on August 8, 1977, were the Mays; that such representation was false, and that Trade-In was the owner on that date. The record reveals, however, that the allegations are supported, if at all, by only one item of evidence, utility records showing that the named consumer was changed from the Mays to McClintick on August 8, 1977. However, the record reflects that McClintick actually had the utilities changed the following week, but the change was backdated to August 8, 1977, the date of the routine meter reading. Moreover, as of August 8, 1977, the Mays were still the owners of the residence. They did not execute a deed to the property until August 10, 1977. There is nothing in the record to demonstrate that any misrepresentations were made as to ownership of the property. The Novotnys were informed that Trade-In was the seller as was evidenced by their acknowledgment of such fact on the purchase agreement. The allegation of misrepresentation as to the ownership of the property at any time in this proceeding was never proved.

The Novotnys also alleged that the Mays never made a counteroffer and that McClintick's claim to the contrary was a "patently false" misrepresentation. Again, there is no evidence in the record to support this claim. In fact, the evidence with reference to the counteroffer indicates that it was made by the Mays. Mr. May testified by way of deposition on written interrogatories that he had a telephone conversation with McClintick on the 9th or

10th of August wherein he rejected the Novotnys' offer and made a counteroffer of $55,000. His testimony was corroborated by Mrs. May in her deposition on written interrogatories. Furthermore, the Mays refused to sign an affidavit to the contrary which was prepared and delivered to them by the Novotnys' counsel. This affidavit was returned to the Novotnys' counsel with a letter indicating that claims of a lack of knowledge of the Novotnys' original offer were false. The record completely fails to substantiate that the Mays ever agreed or would have agreed to sell the property to the Novotnys for $50,000.

We conclude from a review of the record that the Novotnys failed to sustain their burden of proof in this case. The Novotnys failed to prove sufficient facts to show that a misrepresentation occurred at any time, let alone reliance thereon or damages. What they did show was that they purchased a residence with an appraised value of $60,000 for $53,500, at which price the owner, Trade-In, sustained a $384 loss on the transaction. It is also undisputed that the Novotnys signed an acknowledgment of the fact that the seller of the house was Trade-In. While it is regrettable that they were not more careful in determining the meaning of the writing on which they placed their signatures, such action will not support a claim of misrepresentation, as the statements made to the Novotnys were factually correct. We believe the District Court was in error in failing to direct a verdict for appellants.

We therefore reverse the judgment entered herein and remand this matter to the District Court with directions to enter an order to dismiss the Novotnys' petition, and to enter a judgment for appellants on their cross-petition for the $3,500 held by appellees' loan company, plus $315.39 for taxes and termite inspection.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., not voting.