423 N.W.2d 126 (1988)
228 Neb. 518
Thomas W. RUSSELL, Appellee,
v.
BOARD OF REGENTS OF the UNIVERSITY OF NEBRASKA, Appellant.
No. 86-506.
Supreme Court of Nebraska.
May 13, 1988.
David D. Ernst of Gaines, Otis, Mullen & Carta, Omaha, for appellant.
Donald J. Loftus, P.C., Omaha, for appellee.
*127 HASTINGS, C.J., and WHITE and FAHRNBRUCH, JJ., and WOLF and McGINN, District Judges.
WOLF, District Judge.
This is an appeal by the defendant from the judgment of the district court for the plaintiff in an action brought under the State Tort Claims Act, Neb.Rev.Stat. §§ 81-8,209 et seq. (Reissue 1981 & Cum. Supp.1984), for injuries received by the plaintiff when he was injured when he fell on a patch of ice on the University of Nebraska at Omaha campus. On January 24, 1983, the plaintiff, a 47-year-old student at UN-O, was walking from a class building to his car when he fell on a patch of ice on a paved parking lot maintained by UN-O and fractured his right ankle.
The defendant assigns as error each of the following: (1) the court's finding that the defendant was negligent in failing to properly inspect the area; (2) the court's finding that the defendant was negligent in failing to properly maintain the area; (3) the court's finding that the plaintiff was free of any negligence or contributory negligence; and (4) the court's failing to find that the plaintiff assumed the risk of his fall.
Where a law action is tried to the court without a jury, the finding of the court has the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. Siefford v. Housing Authority, 192 Neb. 643, 223 N.W.2d 816 (1974). Also, in Justice v. Hand, 227 Neb. 856, 857, 420 N.W.2d 704 (1988), we stated:
"In a bench trial of a law action, the court, as the `trier of fact,' is the sole judge of the credibility of witnesses and the weight to be given their testimony.... `In reviewing a judgment awarded in a bench trial, the Supreme Court does not reweigh evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.'"
Earlier in January of 1983, there had been some snowfall, and a maintenance crew of the university had removed the snow from the streets and parking lots. The parking lot upon which this accident occurred was located immediately abutting a paved street and was separated from the street only by a half curb. The parking lot itself was built on a slope and had marked spaces for several cars to be parked parallel to each other but perpendicular to the street. When the maintenance crew had removed the snow from the street and parking lot in this area, it had apparently pushed the snow up the incline to the top and beyond the parking space. On the date of the injury, the snow pile at the top of the parking lot was still approximately 6 feet high. As the plaintiff was walking along the edge of the street, a car approached him, and plaintiff stepped off the street and onto the parking area. After taking only a step or two, he fell, fracturing his right ankle. The plaintiff testified that he did not see the ice before stepping upon it and that it was a patch of ice not as large as the parking stall itself. A member of the rescue team which came to transport the plaintiff to the hospital for treatment also slipped on the ice in the process of trying to pick up the plaintiff. He testified that he did not see the ice and that team members decided to slide the plaintiff down the incline to the street on the ice to avoid being injured themselves.
Other evidence shows that the last snowfall prior to the accident was a 2-inch snowfall on January 19, 1983. The temperature readings at Eppley Airfield showed high temperatures during each day to be 24° F on the 19th, 27° F on the 20th, 30° F on the 21st, 27° F on the 22d, 35° F on the 23d, and 31° F on the 24th, the day of the accident.
The evidence is sufficient to support a finding by the court that the snow piled at the top of the parking area by the maintenance crew began to melt on Sunday, the 23d of January, drained down to the parking stall, and then froze into ice during the evening of the 23d and the morning of the 24th. There being no maintenance crew available on Saturday and Sunday, there was no deicing material spread on the campus *128 or on icy patches during the weekend, and a dangerous condition was created.
Although no witnesses for the defendant testified that they had seen the ice patch or been advised of the ice patch prior to the fall by the plaintiff, there is sufficient evidence to support a finding of negligence of the defendant on the basis that the defendant did, by its act, create a dangerous condition by placing the pile of snow in such a position that normal temperature changes would result in the formation of ice at the location in which the plaintiff fell.
The plaintiff has the burden to prove by the greater weight of the evidence that the defendant either created the condition, knew of the condition, or, by the exercise of reasonable care, would have discovered the condition.
The trial judge specifically found:
The maintenance people knew, or should have known, that with a high temperature of 35 degrees on January 23, 1983, snow, including portions of the bank at the top of the area where the plaintiff fell, would likely melt to some extent. They likewise knew, or should have known, that the below-freezing temperatures commencing in the early morning hours of January 24, 1983, and continuing right up to the time of this accident would cause the water from melting snow to freeze. In spite of this knowledge, UNO's maintenance people failed to put any deicing material in Lot P and specifically in the area where the plaintiff fell when they had ample time to do so. This was also in violation of their own standard operating procedures.
It also appears that the UNO maintenance people did not inspect the Lot P area on the morning of January 24, 1983, to determine if melting had occurred and ice formed even though they had ample time to do so.
Based upon the record and the specific findings of the trial judge, this court cannot disturb those findings of negligence on the part of the defendant, because they are not clearly wrong.
The defendant further claims that the plaintiff failed to exercise ordinary care and prudence to avoid obvious dangers and is therefore contributorily negligent.
In Tichenor v. Lohaus, 212 Neb. 218, 322 N.W.2d 629 (1982), we held that when there is some distraction or other reason which will excuse the failure to see that which is in plain sight, it can be said that a person has exercised that degree of care required of an ordinarily prudent person. In that case, the plaintiff testified that when he sensed that a motor vehicle was approaching the ramp he moved to his left to make way for it and that he did not see the icy spot until he was just about to place his foot down, at which point he could no longer stop. In the present case, there is evidence that the plaintiff moved from his direct route to step up on the parking area because of the approaching vehicle. Based upon the circumstances, this appears to be a reasonable reaction by the plaintiff and could detract from his observation and scrutiny of the place to which he was stepping. The trier of fact could consider this in determining whether the plaintiff was exercising that degree of care required of an ordinarily prudent person and could also consider the fact that the member of the rescue team failed to see the ice and only after slipping discovered that it was unsafe to try to lift the plaintiff from that area. Based upon the record, the trial court was not clearly wrong in determining that the danger was not obvious and that the plaintiff did not fail to use ordinary care.
With regard to the defendant's claim that the plaintiff assumed the risk, it is clear that the defendant has failed to prove by the greater weight of the evidence that the plaintiff knew or should have known of the danger involved.
There have been no issues raised as to the compliance by the plaintiff with the provisions of the State Tort Claims Act or as to the amount of the damages awarded.
The judgment for the plaintiff in the amount of $20,928.01 is affirmed.
AFFIRMED.