STEVEN RICHARDSON, APPELLEE, V. AMES AVENUE CORPORATION, DOING BUSINESS AS PHIL'S FOODWAY, A NEBRASKA CORPORATION, APPELLANT.

525 N.W.2d 212

Filed January 6, 1995. No. S-93-218.

Lisa M. Meyer and David D. Ernst, of Gaines, Mullen, Pansing & Hogan, for appellant.

Timothy J. Cuddigan and Abigail A. Duffy, P.C., of Marks & Clare, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ.

CAPORALE, J.

Plaintiff-appellee, Steven Richardson, claims that his fall and resulting injuries were the proximate result of the negligence of the defendant-appellant occupant of the premises, Ames Avenue Corporation, doing business as Phil's Foodway. In accordance with the verdict, the district court entered judgment in Richardson's favor. Phil's Foodway appealed to the Nebraska Court of Appeals, asserting as its operative error that the district court erred in overruling its motion for a directed verdict made at the close of all the evidence. On our own motion, we removed the matter to this court in order to regulate the caseloads of the two appellate courts. For the reasons hereinafter set forth, we reverse the judgment of the district court and remand the matter with the direction that the cause be dismissed.

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994).

The record establishes that on January 21, 1991, Richardson and his daughter were shopping in Phil's Foodway between 7 and 7:30 p.m. Sending his daughter to the produce aisle, Richardson headed with a cart toward the canned goods aisle. When Richardson arrived at the canned goods aisle, he glanced down the aisle and saw nothing that would be hazardous or dangerous. While he was looking for a can of clam chowder, his daughter appeared at the end of the canned goods aisle and yelled to him that the store was out of the item she had been sent to get. Richardson told her to help him look for the chowder. The daughter then joined Richardson in the search. As Richardson took two or three steps, he slipped and fell. When attempting to stand up, he continued to slide on some material; as he did so, the material began to foam, revealing for the first time the presence of a clear, soapy liquid. An off-duty police officer employed by Phil's Foodway to patrol the aisles found Richardson and helped him to his feet.

Richardson had no knowledge of how long the liquid soap had been on the floor or who had put it there, but he had expected the store to be safe and clean. Although he had no complaint as to the cleanliness of the store, he was concerned about safety. While there was testimony that, as a prank, substances had been spilled on the floor, Richardson conceded that the store was normally both clean and safe.

Having received a report of Richardson's fall from a customer, the night manager, Robert Aiello, proceeded to the site and offered to call a rescue squad, which Richardson refused. Aiello examined the locale and discovered the soap on the floor. The soap was in a puddle about 6 inches in diameter with a trail 10 to 15 feet long extending down the aisle. He found no soap containers in the aisle in which Richardson had fallen and failed to find any cracked or broken containers that could have leaked the soap. No customers or employees had reported any spills, and Richardson did not have soap in his shopping cart.

Although there was no written record of when the floors were mopped, Aiello testified that on the average, the aisles were mopped between four and eight times per day. On the day of Richardson's fall, they were last mopped sometime between 4

and 6 p.m. Aiello also testified that another manager, three to five checkers, three sackers, a floor man whose responsibilities were to stock displays and generally "pick up" the store, and a security guard were working the evening of Richardson's fall.

While Aiello conceded that a store employee could have left the soap in the aisle, he also pointed out it was possible that someone other than a store employee could have done so. While, according to this witness, there was no regular timetable for discussing customer safety with employees, there was an informal safety program consisting of managers teaching employees how to look for spills and areas of hazard. Managers, the security guard, and employees working the floor constantly move through the store looking for spills. When an employee finds a spill, the manager is alerted, who then designates someone to clean it up immediately.

Ron Beck testified that he had been the store manager for 11 years and had a total of 30 years' experience in the grocery business. He stated that five cashiers, two sackers, two assistant managers, one office employee, and an off-duty police officer were working the evening of Richardson's fall. Beck normally arrived at the store at 6:30 a.m. and left at 5:50 p.m. On the evening of Richardson's fall, he had left the store at the usual time after having first toured the store looking for problems so that he could instruct the night crew as to what needed to be done.

Beck also testified that new clerks are taught to keep things clean and picked up and are trained as to how to properly sweep, mop, and clean up spills. Employees are instructed to have someone guard the area of a spill or restrict the area of a spill while another employee retrieves a mop to clean it up. They are also trained to change the water after mopping up a spill in order to mop the area again to remove any film left on the floor.

With those facts in mind, we recall that a possessor of land is subject to liability for injury caused to a business invitee by a condition on the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an

unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either (a) would not discover or realize the danger, or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the plaintiff invitee against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 438 N.W.2d 485 (1989).

That liability is predicated on proof of the possessor's superior knowledge, actual or constructive, of dangers to which the invitee is subjected and of which the invitee is unaware. *Collins v. Herman Nut & Supply Co.*, 195 Neb. 665, 240 N.W.2d 32 (1976). Stated another way, it is the superior knowledge the invitor has or should have which is the foundation of liability; absent such superior knowledge, no liability exists. *Widga v. Sandell*, 236 Neb. 798, 464 N.W.2d 155 (1991). As recently summarized by another court, in cases involving a slip and fall as the result of a slippery or foreign substance on the floor of a supermarket, a plaintiff must establish either actual or constructive notice of the condition which caused the fall. "'[T]o constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it[.]' " *Benware v. Big V Supermarkets, Inc.*, 177 A.D.2d 846, 847, 576 N.Y.S.2d 461, 462-63 (1991). Thus, although a storekeeper has a duty to use due care to keep the premises reasonably safe for use of an invitee, a storekeeper is not an insurer of the safety of customers patronizing the place of business. *Bahe v. Safeway Stores, Inc.*, 186 Neb. 228, 182 N.W.2d 202 (1970); *Lund v. Mangelson*, 183 Neb. 99, 158 N.W.2d 223 (1968).

Accordingly, in *Taylor v. J. M. McDonald Co.*, 156 Neb. 437, 56 N.W.2d 610 (1953), we affirmed a judgment on a verdict in favor of a customer because the evidence was sufficient to sustain the jury's implied finding that the customer had slipped on a gum deposit which had been left on the floor for at least 2 weeks. In so ruling, we quoted from *Hudson v. F. W. Woolworth Co.*, 275 Mass. 469, 176 N.E. 188 (1931), in which that court reasoned:

"A finding that the plaintiff's injury was caused by a piece of candy on the floor of the store was warranted. The evidence of the appearance of the candy and its sticking to the floor, and of the appearance of the floor under and around it, warranted a finding that the candy had been on the floor such a period of time that in the exercise of reasonable, (sic) care to keep the premises in safe condition for use by customers, the defendant should have found and removed it. There was something on which to base a conclusion that the candy had not been dropped a moment before by a customer."

*Taylor*, 156 Neb. at 444, 56 N.W.2d at 614.

In contrast, however, in the absence of evidence to support an inference of the possessor's actual or constructive knowledge of the hazardous condition, we have refused to allow the jury to speculate as to the possessor's negligence. In *Jeffries v. Safeway Stores, Inc.*, 176 Neb. 347, 125 N.W.2d 914 (1964), it had recently snowed, and the storekeeper had applied a mixture of calcium chloride and Zorball to the sidewalk to melt the ice, absorb the moisture, and prevent refreezing. Zorball is a coarse, gritty substance used to prevent slipping and skidding. A customer slipped on the mixture when she entered the store.

While there was evidence that there had been some tracking of Zorball, dirt, and moisture into the store, there was no evidence that the manager or any employee knew of the condition before the customer fell. There also was no evidence as to when the Zorball had been tracked in and become dangerous. In reversing the district court's judgment on the verdict in favor of the customer, we noted that there was no evidence that the store or its employees knew of the tracking in of snow, dirt, or Zorball in excessive quantities prior to the accident. We also observed that there was no evidence as to the length of time the condition had existed from which the jury might infer negligence on the part of the storekeeper in not discovering it and taking steps to eliminate it or warn of its existence. We thus reasoned that even assuming the customer fell on the floor that was made slippery by Zorball tracked in by other customers, that fact alone was insufficient to support a judgment in favor of the customer. In order for such recovery,

there must be evidence that "defendant's employees or servants had knowledge of the condition prior to the time of plaintiff's fall, or that the condition had existed for such a period of time that they should have known of it and corrected it." 176 Neb. at 353, 125 N.W.2d at 917. In the absence of such evidence, there is no proof of negligence.

A similar situation was presented in *Williams v. Bedford Market, Inc.*, 199 Neb. 577, 260 N.W.2d 316 (1977). Therein, the plaintiff was on her way to obtain some steak sauce when she turned a corner and fell. The steak sauce was in the same aisle as the produce section. The plaintiff did not see anything in the aisle before she fell, but after the accident she noticed a spot of water which was a couple of inches in size. As there was water on her shoe, the plaintiff concluded that it was the water that had caused her to slip.

In *Williams*, the area was well lighted, and the plaintiff testified that the floor was clean. A store employee testified that the floors were swept and mopped nightly and that, in his experience, if there was any water or breakage on the floor, it was not left there for more than 4 or 5 minutes. Another store employee testified that the floor was always clean and was kept as clean as possible during the day. This employee also testified that the store manager was "all over the store during the day and that he would clean things up from the floor if he saw something spilled." 199 Neb. at 579, 260 N.W.2d at 318. The *Williams* store manager testified that there was no water or loose items on the floor after the plaintiff had fallen. He also testified that he kept the floor surfaces in a very clean condition at all times.

The *Williams* plaintiff contended that the water sprayed on the produce to keep it fresh might have fallen to the floor, thereby causing the spot. We, however, ruled that there was no issue of fact to be tried by the jury, for all reasonable inferences to be deduced from the evidence supported the judgment in favor of the store.

In the instant case, Richardson alleges that Phil's Foodway failed to adequately staff the store, failed to adequately maintain the store, and failed to discover and clean up the liquid soap. However, Richardson has failed to prove any of these claims.

He produced no evidence that the level of staffing was

inadequate or unreasonable under the circumstances. In point of fact, the record reflects that at least 10 people were working on the evening of Richardson's fall, several of whom were directly responsible for keeping the premises safe and clean as they had been trained to do.

Nonetheless, Richardson argues the fact that these employees were walking through the store and failed to find the soap on the floor infers negligent conduct. But this argument assumes the soap was already on the floor and discoverable when these employees were circulating throughout the premises. Yet, unlike the situation in *Taylor v. J. M. McDonald Co.*, 156 Neb. 437, 56 N.W.2d 610 (1953), Richardson presented no evidence from which it can be inferred how long the soap had been on the floor before he fell. Richardson's argument clearly assumes facts not in evidence.

Richardson also failed to produce any evidence to support his second allegation, that Phil's Foodway failed to adequately maintain the store and clean up debris. On the contrary, the record reflects evidence that employees mopped the store frequently and that it had been mopped within not more than $3^1/_2$ hours prior to Richardson's fall and inspected not more than $1^5/_6$ hours before. Moreover, Richardson produced no evidence that the store was dirty or poorly maintained and no evidence that the employees had failed to properly complete their duties.

As to Richardson's third and final allegation, that Phil's Foodway was negligent in failing to remove the liquid soap from the store floor when it knew or should have known of the dangerous condition created by the liquid soap, there is no evidence that Phil's Foodway had actual or constructive knowledge of the condition. There were no reported spills by customers or employees, and the store manager had toured the store before he left for the day at 5:50 p.m., but discovered no spills.

In order to withstand a motion for directed verdict, Richardson was required to have produced some evidence upon which a jury could reasonably infer that Phil's Foodway failed to exercise reasonable care to discover and remedy the hazardous condition. Conjecture, speculation, or choice of possibilities are not proof; there must be something more which

would lead a reasoning mind to one conclusion rather than to the other. *Mustion v. Ealy*, 201 Neb. 139, 266 N.W.2d 730 (1978). Based on the available evidence, the jury here could only speculate as to how long the soap had been on the floor, for there is nothing in the record to make it more probable or less probable that the soap had been on the floor for almost 2 hours or less than 2 minutes.

Where in a civil case several inferences are deducible from the facts presented, which inferences are opposed to each other but equally consistent with facts proved, the plaintiffs do not sustain their position by reliance alone on inferences which would entitle them to recover. *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 360 N.W.2d 488 (1985). The burden of proving a cause of action is not sustained by evidence from which a jury can arrive at its conclusions only by guess, speculation, conjecture, or choice of possibilities; there must be something more which would lead a reasoning mind to one conclusion rather than to another. *Shibata v. College View Properties*, 234 Neb. 134, 449 N.W.2d 544 (1989).

Before evidence is submitted to a jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it and upon whom the burden is imposed. *Novotny v. McClintick*, 206 Neb. 99, 291 N.W.2d 252 (1980); *Lund v. Mangelson*, 183 Neb. 99, 158 N.W.2d 223 (1968).

There was no evidence here upon which the jury could properly proceed to find in favor of Richardson. Where a properly pled issue affords no basis for recovery under the evidence adduced in the case, the trial court's submission of such an issue to the jury constitutes error. See *Era v. Sapp Bros. GMC, Inc.*, 189 Neb. 366, 202 N.W.2d 750 (1972). Therefore, the district court erred in denying the motion for directed verdict of Phil's Foodway at the close of all the evidence and submitting the case to the jury.

Accordingly, as noted earlier, the judgment of the district court is reversed and the cause remanded with the direction that the cause be dismissed.

REVERSED AND REMANDED WITH DIRECTION.

WHITE, J., dissenting.

In slip and fall cases we have said that "[t]he plaintiff has the burden to prove by the greater weight of the evidence that the defendant either created the condition, knew of the condition, or, by the exercise of reasonable care, would have discovered the condition." *Russell v. Board of Regents*, 228 Neb. 518, 520, 423 N.W.2d 126, 128 (1988).

The evidence clearly establishes that at the least, no mopping or inspection of spills took place in the defendant store between 5:50 and 7 p.m. It is further established that liquid soap was present on the floor of the aisle and was the cause of the fall and injury. The plaintiff thus clearly was entitled to have submitted to the jury whether by reasonable care the defendant ought to have discovered the condition.

The majority has expanded the plaintiff's burden to include a duty to offer evidence of how the hazardous condition occurred and its duration. This was not the law in this State prior to this decision. I dissent.

LANPHIER, J., joins in this dissent.

LANPHIER, J., dissenting.

I agree with the dissent of Justice White. However, I write separately because I wish to add that I believe the majority failed to give Richardson the benefit of the reasonable inferences deducible from the evidence as required by precedent. It is well settled that upon review of a motion for directed verdict, the party against whom the motion is made is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. See *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994). Since Phil's Foodway made the motion for a directed verdict, Richardson is entitled to have the benefit of every reasonable inference.

Richardson adduced evidence showing that there had been a problem at Phil's Foodway with people intentionally breaking or spilling items on the floor. There was evidence that a large amount of liquid soap, readily visible to the assistant store manager, was present on the floor of the store. The evidence

showed that Phil's Foodway had no written safety program. Additionally, the evidence showed that the management could not determine precisely when or who had last mopped the floor of Phil's Foodway. The reasonable inference deducible from this evidence is that had Phil's Foodway exercised reasonable care, the dangerous condition would have been discovered. Because the majority failed to give Richardson the benefit of this inference and follow well–established rules concerning the standard of review of a motion for a directed verdict, I respectfully dissent.

WHITE, J., joins in this dissent.