MICHAEL J. MCINTOSH, A MINOR, BY AND THROUGH MICHAEL T.
MCINTOSH, FATHER OF SAID MINOR CHILD, AND MICHAEL T.
MCINTOSH, APPELLANTS AND CROSS–APPELLEES, V. THE OMAHA
PUBLIC SCHOOLS, APPELLEE AND CROSS–APPELLANT.

544 N.W.2d 502

Filed March 8, 1996.   No. S–94–310.

Gordon R. Hauptman and Terry M. Anderson, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellants.

Brien M. Welch, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

In this lawsuit, brought under Nebraska's Political Subdivisions Tort Claims Act against the Omaha Public Schools (OPS), Michael J. McIntosh, an OPS high school student, and Michael T. McIntosh (his father) claim that the trial court erred in holding that the younger McIntosh (McIntosh) was a licensee rather than an invitee when he was injured while participating in a 2-week spring football clinic conducted by an OPS high school on its football field.

In order to hold OPS liable for McIntosh's injury, the trial court required McIntosh, as a licensee, and his father to prove willful or wanton negligence on the part of OPS in its maintenance and use of the practice field upon which McIntosh's injury occurred.

We agree with McIntosh and his father that, under the facts of this case, McIntosh was an OPS invitee. Therefore, OPS was subject to a higher standard of care toward McIntosh than if he had been a licensee. As a result, we reverse the judgment of the district court for Douglas County in favor of OPS and remand the cause for further proceedings consistent with this opinion.

In a cross-appeal, OPS claims that the trial court erred in finding that the lawsuit was not barred by the Nebraska Recreation Liability Act, Neb. Rev. Stat. § 37-1001 et seq.

(Reissue 1993). We reject OPS' cross–appeal claim and affirm the district court's holding that the Nebraska Recreation Liability Act does not apply in this case.

## ASSIGNMENTS OF ERROR

The McIntoshes claim that the trial court erred in (1) finding that McIntosh was not an invitee, (2) finding that OPS was not negligent, (3) finding that OPS' negligence was not the proximate cause of McIntosh's injury, (4) finding that McIntosh assumed the risk of injury from the unsafe premises, and (5) abusing its discretion by improperly limiting the scope of the McIntoshes' expert witness.

OPS' cross–appeal claims that the trial court erred by not finding that the petition was barred by the Nebraska Recreation Liability Act.

## STANDARD OF REVIEW

The determination as to whether a plaintiff is an invitee or licensee is a question of fact. See *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495 (1994).

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the judgment, it must be considered in the light most favorable to the successful party. See *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995). Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Id.* See *Harvey v. Metropolitan Utilities Dist.*, 246 Neb. 780, 523 N.W.2d 372 (1994).

## FACTS

Michael. J. McIntosh played freshman football for Omaha South High School in 1988. In his freshman year, fall football practice was conducted at Collin Field on the campus of Omaha South High School. Before McIntosh began playing freshman football, McIntosh's father signed a permission form in which he agreed not to hold the school responsible for any injury occurring to his son in the course of the athletic activity.

McIntosh and his father also signed a "parental consent form" which warned them of potential injuries which could result from participation in any athletic activity.

In the spring of 1989, prior to his sophomore year, McIntosh attended a spring football clinic at Omaha South High School. According to McIntosh, the 2-week clinic served to familiarize future high school football players with the offensive and defensive schemes of the football team. OPS claimed that attendance at the clinic was voluntary. It was McIntosh's understanding that if a student wanted to play football, he should attend the spring clinic. Chris Kirby, a student who also attended the spring clinic, testified that in order to play football, a student "needed" to attend the spring clinic.

The spring clinic was conducted after school was dismissed for the day during the 2-week period. The participants did not pay a fee and did not use school equipment.

Jerry Bartee, then athletic director at Omaha South High School, testified that the spring clinic was a school-related function under the physical education program at Omaha South High School. Jack Oholendt, the head coach of the varsity football team, testified that the spring clinic was part of the high school football program. The school's varsity football coaches were in charge of the clinic.

Before the spring clinic, McIntosh considered Collin Field a dangerous field for contact football. In fact, as a freshman, McIntosh had complained to his football coach that Collin Field was a "hard field." McIntosh's father also felt that his son could be injured playing on Collin Field. At trial, McIntosh described Collin Field as "very hard-surfaced" and "uneven." He testified that "if you were standing back on the track and looking at the field, you would see grass, but if you went to the center of the field where it was mostly traveled, there was basically no grass."

Chris Hamblin, a student who also attended the spring clinic, described Collin Field as "rutted" with "clumps of hard-packed dirt."

Oholendt described Collin Field as a hard "clay, compacted area." In comparing Collin Field to other OPS fields, Oholendt testified that it was the worst field in the OPS district. He also

testified that during his entire tenure at Omaha South High School, he did not believe that Collin Field was ever "maintained at a level I thought it should be."

Bartee, however, testified that Collin Field was usable for athletic competition in the spring of 1989. The record reflects that, at an earlier time, Bartee had described Collin Field as being in terrible condition.

Duane Haith, coordinator of physical education and athletics for OPS, testified that Collin Field was safe for physical education activities and athletic event activities. He, however, also testified that when comparing Collin Field to other fields in the OPS system in the spring of 1989, Collin Field ranked in the "lower quartile" in terms of usability and playability. Phillip Gould, an OPS employee responsible for taking care of Collin Field, testified that he could not recall any ruts on Collin Field in June 1989.

On June 1, 1989, the last day of school, the spring football clinic conducted a seven–on–seven touch football game on Collin Field. McIntosh played middle linebacker during the game.

The play during which McIntosh became injured was a passing play. After the quarterback threw the football, McIntosh jumped and successfully deflected the pass. McIntosh testified that he then landed his left foot "flat and my body went into a twisting motion . . . . And I heard a pop. . . . I remember hopping a few times on my right leg, looking down and seeing my foot kind of dangle and then I just fell." McIntosh testified that his left foot was stuck or caught and that it stayed in the same position from the time he planted it flat on the ground until the time he heard his leg pop.

Kirby witnessed the injury and testified that as McIntosh "came down, his foot remained stationary and he twisted, and his foot remained there as he tried to fall." Kirby further testified that the location on the field where McIntosh's left foot first touched the ground was "very hard, rutted and [had] very little grass, if any at all."

Oholendt, in completing an OPS school accident report, stated that after jumping, McIntosh "came down and twisted with foot caught on ground."

Dr. Richard Murphy, McIntosh's treating physician, diagnosed McIntosh as suffering a compound fracture of the left tibia and fibula.

On July 14, 1993, McIntosh and his father filed an amended petition in the district court for Douglas County against OPS. The amended petition alleged in substance that McIntosh's injury was directly and proximately caused by the school's negligence in (1) conducting practice on the portion of the field that contained ruts and holes, (2) failing to warn McIntosh of the dangerous field condition, (3) not repairing holes and ruts and hard areas of the field, (4) not inspecting the field prior to practice and not suspending practice until the field was safe, (5) failing to maintain the field so that it did not become hard, and (6) failing to install a smooth and flexible surface.

In its answer, OPS denied any negligence on its part and claimed, in substance, that McIntosh had knowledge of the risks and hazards of football activity and the conditions of Collin Field and that the petition was barred by the Nebraska Recreation Liability Act. OPS also claimed that the action was barred because the father had signed "a Parent's or Guardian's Permission form and a Parental Consent form agreeing not to hold [OPS] responsible for any injury to plaintiff Michael J. McIntosh in his participation in football." However, the record reflects that only the parent's permission form contained language agreeing not to hold the school responsible for any injury occurring to McIntosh in the course of football activities.

During the trial, the McIntoshes offered the testimony of expert witness Marc Rabinoff, professor in the department of human performance, sport, and leisure studies at the Metropolitan State College of Denver and president of Rabinoff Consulting Services. Rabinoff testified that the operation and maintenance of Collin Field on June 1, 1989, was below industry standards of care. Rabinoff further testified that Collin Field was not maintained adequately for physical education activities and was not appropriate by any standard for the use of high school football practice.

When Rabinoff was asked if he had an opinion as to whether a student athlete would recognize the dangers of an unsafe field condition such as Collin Field, counsel for OPS objected on the

grounds of lack of qualifications of the witness and foundation. The trial court sustained the objection.

Following the trial, the district court found that the Nebraska Recreation Liability Act did not apply, because Collin Field was owned and maintained by OPS and was not open or available to the public for recreational activities. The trial court also found that McIntosh, as a licensee, did not prove willful or wanton negligence on the part of OPS or that OPS failed to warn of hidden dangers or peril known to the school, but unknown to McIntosh.

## ANALYSIS

The McIntoshes argue that the trial court erred in finding that McIntosh was a licensee rather than an invitee and that, as a result, the court applied the wrong standard of care.

An invitee is a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage. *Schild v. Schild*, 176 Neb. 282, 125 N.W.2d 900 (1964). A licensee is a person who is privileged to enter or remain upon the premises of another by virtue of the possessor's express or implied consent, but who is not a business visitor. *Blackbird v. SDB Investments, ante* p. 13, 541 N.W.2d 25 (1995). The real difference is the purpose of the invitation. If an invitation relates to the business of the one who gives it or for the mutual advantage of both parties of a business nature, the party receiving it is an invitee. If an invitation is for the convenience, pleasure, or benefit of the person enjoying the privilege, it is only a license, and the person receiving it is a licensee. *Roan v. Bruckner*, 180 Neb. 399, 143 N.W.2d 108 (1966).

In *Russell v. Board of Regents*, 228 Neb. 518, 423 N.W.2d 126 (1988), a University of Nebraska at Omaha student was injured when he fell on a patch of ice on a campus parking lot while walking from a class building to his car. The student brought an action under the State Tort Claims Act. The Board of Regents appealed from the trial court's ruling in favor of the student. In affirming the trial court's judgment, this court treated the student as an invitee and relied upon *Tichenor v.*

*Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982), which involves a business invitee.

OPS relies on *McCurry v. Young Men's Christian Assn.*, 210 Neb. 278, 313 N.W.2d 689 (1981), in which an individual brought an action against Young Men's Christian Association (YMCA) as a result of an injury which arose from a fall while playing basketball on an outdoor asphalt playground owned by YMCA. The plaintiff was not a member of YMCA and had not obtained any express permission to use the playground. There was no evidence of an invitation by YMCA to the public to use the playground. The trial court entered a directed verdict in favor of YMCA. We affirmed the trial court and held that given the facts of the case, the plaintiff was a licensee and not an invitee.

Similar to the facts in *Russell v. Board of Regents, supra,* McIntosh was a student who was on campus for a school function when he was injured. That is far removed from the facts of *McCurry v. Young Men's Christian Assn., supra,* which involved an uninvited person who was not a member of YMCA. OPS invited McIntosh, a student, to attend the spring clinic as part of the physical education program of Omaha South High School. The invitation was of a business nature for the mutual advantage of both parties.

Triers of fact may apply to the subject before them that general knowledge which any person must be presumed to have. *Beavers v. Christensen,* 176 Neb. 162, 125 N.W.2d 551 (1963). It is general knowledge that a public school is a tax-supported political subdivision in the business of providing academic and physical fitness and, as such, is liable for negligence under the Political Subdivisions Tort Claims Act. At the time that McIntosh suffered injury, he was a student participating in an Omaha South High School physical fitness educational clinic which was mutually beneficial to McIntosh and the school. Clearly, at the time of the injury, McIntosh was an invitee.

Because McIntosh was an invitee, the trial court was clearly wrong in placing upon the McIntoshes the burden to prove willful or wanton negligence on the part of OPS. A possessor of land is subject to liability for injury caused to a business invitee by a condition of the land if (1) the possessor defendant

either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either (a) would not discover or realize the danger, or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the plaintiff invitee against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995).

As a result of our analysis, we reverse the judgment of the trial court and remand the cause for a new trial, at which the proper standard of care is to be utilized.

Because the trial court's factual findings were applied under the wrong standard of care, we need not review the McIntoshes' assigned errors regarding the factual findings of the trial court.

In their fifth assigned error, the McIntoshes claim that the trial court abused its discretion by improperly limiting the scope of their expert witness, Rabinoff. Specifically, the trial court, on grounds of witness qualification and foundation, refused to allow Rabinoff to answer whether a student athlete would recognize the dangers present on a field such as Collin Field.

A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995). The soundness of a trial court's ruling regarding an expert's qualifications depends upon the particular facts of the case. *Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995). To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Hoeft v. Five Points Bank*, 248 Neb. 772, 539 N.W.2d 637 (1995).

The record reflects that Rabinoff taught courses in sports psychology at Metropolitan State College of Denver, covering areas such as motivation, anxiety, and stress. The record also reflects that coaches and athletic directors take sports

psychology courses to learn about the ability of athletes to make risk assessments. However, the record does not reflect that Rabinoff is a sports psychologist. Neither does the record reflect that the courses taught by Rabinoff cover risk assessments by student athletes.

In any event, given the particular facts of the case, the McIntoshes were not unfairly prejudiced. The record had already established that McIntosh, a student athlete, was aware of the risk and considered the field to be dangerous for contact football. We do not find that the trial court abused its discretion in limiting the scope of the expert testimony.

Finally, in its cross–appeal, OPS argues that the trial court erred by not finding that the petition was barred by the Nebraska Recreation Liability Act. The stated purpose of that act "is to encourage owners of land to make available to the public land and water areas for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon." § 37–1001. In order to facilitate the purpose of the act, a landowner need allow only some members of the public, including the plaintiff, to use his land without charge. See *Holden v. Schwer*, 242 Neb. 389, 495 N.W.2d 269 (1993).

Clearly, a student participating in a clinic sponsored by his school's athletic program does not fall under the category of recreational use of land open to members of the public without charge. Collin Field, as it pertained to McIntosh, was not open to members of the public without charge. Rather, at the time of McIntosh's injury, the field was open to students who were members or who intended to be members of the Omaha South High School football team. The trial court was not clearly wrong in finding that the Nebraska Recreation Liability Act does not apply to the case at bar.

## CONCLUSION

We affirm the district court's holding that the Nebraska Recreation Liability Act does not apply in this case. We hold that the district court was clearly wrong in finding that McIntosh was a licensee and, because of that error, utilized the

wrong standard of care in determining whether OPS was liable for McIntosh's injury. On that issue, we reverse the judgment of the trial court and remand the cause to the district court for further proceedings in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.