JANE DOE TWO, APPELLEE, V. YARON ZEDEK, M.D., APPELLANT.
587 N.W. 2d 885

Filed January 15, 1999.    No. S-97-1200.

John R. Douglas and Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Blaine T. Gillett, of Ruff, Nisley & Lindemeier, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

In this appeal, Dr. Yaron Zedek, appellant, challenges the Lincoln County District Court's denial of his motion for a directed verdict. This is a medical malpractice action originally filed by "Jane Doe Two" (Doe), appellee, against North Platte Nebraska Hospital Corporation, doing business as Great Plains Regional Medical Center (Great Plains), and Zedek.

Doe was admitted to Great Plains by Zedek for psychiatric treatment and was a patient at the time she was sexually

assaulted by an employee of the hospital. The case against Zedek was tried on a theory of professional negligence, and in accordance with the jury verdict, judgment was entered in favor of Doe. The main issue on appeal is whether Doe satisfied her burden of establishing Zedek's negligence as a proximate cause of her alleged injuries of mental suffering.

FACTUAL AND PROCEDURAL BACKGROUND

Doe is a mildly retarded, 52-year-old female who has an IQ of 64. Prior to hospitalization, Doe had been suffering from recurrent, nonpsychotic major depressive episodes. Doe was admitted to the psychiatric unit at Great Plains on September 8, 1993, pursuant to the recommendation of Zedek. On September 27, Doe left the hospital on a day pass with her caseworker, Jean Risseeuw. During this excursion, Doe told Risseeuw that Doe had had sex with someone at the unit. Upon their return to the hospital, Risseeuw informed the nursing staff of what Doe had told her. The next day, during morning report, Zedek was notified of what Doe had reported to Risseeuw. After morning report, Zedek and the nurse manager met with Doe privately and discussed the incident. Doe told Zedek that approximately 8 days earlier a "black man" had come into her room to take her vital signs. Doe alleged that this man took her into the bathroom and had sex with her. At trial, Doe testified that what she had meant by a black man was a man dressed in "black pants and a black shirt."

Zedek testified that he did not believe Doe for many reasons. Zedek believed that Doe was probably relating a dream, because she was on antidepressant medications. He also testified that he believed the sexual assault was highly unlikely because Doe had a roommate, she was in a locked psychiatric unit, she was checked every 10 to 15 minutes by the staff, and there were no black employees or patients on the unit. Although Zedek did not believe Doe, he told the nurse manager to notify the appropriate sources to investigate the matter. The police were notified the same day and began an investigation. The investigation eventually revealed a suspect who was an employee of the hospital, and charges were filed against him.

After Zedek learned of Doe's assault, he continued to see Doe every day during her hospitalization. During these visits,

Zedek would ask Doe general questions about how she was doing and if she had any concerns. In response to these questions, Doe never mentioned the sexual assault. After Doe's discharge from the hospital on October 6, 1993, she continued to see Zedek on an outpatient basis for another year. Based on hospital records, nurses' notes, and Zedek's own notes, Doe never asked for, nor was she ever offered, psychiatric counseling or therapy to treat any potential trauma or harm she may have experienced from the assault. After hospitalization, Doe did receive professional counseling for the sexual assault from Mary Muller, a therapist with a master's degree in clinical psychology. This therapy, however, was independent of any offered by Zedek or Great Plains.

On May 17, 1995, Doe filed this action against Great Plains and Zedek. Great Plains settled with Doe and was dismissed from the litigation. Zedek then filed a motion for summary judgment, which was denied. A jury trial followed, and the case against Zedek was tried on the theory that he was professionally negligent in failing to properly evaluate and treat Doe after she informed him of the sexual assault and that, as a result, Doe experienced mental suffering.

At the end of Doe's case, Zedek moved for a directed verdict on several grounds, most notably the reason that there was no competent evidence that Doe sustained any damage as a result of any of Zedek's alleged acts of negligence. The motion was overruled, and the trial proceeded. At trial, Zedek presented evidence that he had not been negligent in the care of Doe, after which he renewed his motion for a directed verdict on the same grounds. The jury returned a verdict against Zedek in the amount of $100,000. Zedek then filed a motion for judgment notwithstanding the verdict or in the alternative a new trial. The district court denied both motions, and this appeal followed. We removed the case to our docket pursuant to our power to regulate the Nebraska Court of Appeals' caseload and that of this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Zedek contends, rephrased and summarized, that the district court erred in (1) denying his motion for summary judgment;

(2) denying his motion for a directed verdict; (3) denying his motion for judgment notwithstanding the verdict; (4) denying his motion for a new trial; (5) failing to give a requested jury instruction; (6) failing to instruct the jury regarding the settlement with Great Plains, pursuant to Neb. Rev. Stat. § 25-21,185.11 (Reissue 1995); and (7) failing to reduce the verdict against Zedek by the amount of the settlement between Doe and Great Plains.

## STANDARD OF REVIEW

A denial of a motion for summary judgment is not a final order and therefore is not appealable. *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997); *Moulton v. Board of Zoning Appeals*, 251 Neb. 95, 555 N.W.2d 39 (1996); *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993). Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998).

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998); *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996); *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996). To the extent issues of law are presented, an appellate court has an obligation to reach independent conclusions irrespective of the determinations made by the court below. *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998); *Farr v. Designer Phosphate & Premix Internat.*, 253 Neb. 201, 570 N.W.2d 320 (1997).

## ANALYSIS

### SUMMARY JUDGMENT

Zedek's first assignment of error challenges the trial court's denial of his motion for summary judgment. It is Zedek's contention that the trial court's denial of his motion for summary judgment is both appealable and reviewable on appeal. We disagree. We have repeatedly stated that a denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore not appealable. *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998); *Pettit v. Paxton*, 255 Neb. 279, 583 N.W.2d 604 (1998); *Strom v. City of Oakland*, 255 Neb. 210, 583 N.W.2d 311 (1998); *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998); *American Family Ins. Group, supra*; *Whalen, supra*; *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996); *Elliott v. First Security Bank*, 249 Neb. 597, 544 N.W.2d 823 (1996); *Randall v. Erdman*, 194 Neb. 390, 231 N.W.2d 689 (1975). The only exception we have fashioned to this general rule is that when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as the court deems just. *Zimmerman, supra*; *Pettit, supra*; *Strom, supra*; *Vowers & Sons, Inc., supra*; *American Family Ins. Group, supra*; *Farmers & Merchants Bank, supra*; *Elliot, supra*; *Randall, supra*. This limited exception is not applicable under the record in this case.

Absent the above-stated exception, the denial of a summary judgment motion is neither appealable nor reviewable. Zedek admits that he is cognizant of this court's holding regarding the denial of summary judgment, but contends he is permitted to reserve the issue for appeal and raise it after the case has reached final judgment. We disagree. As we stated in *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 572-73, 500 N.W.2d 828, 832 (1993), "The law is clear. We need not consider the trial court's denial of appellant's motion for summary judgment." This is so

because whether a denial of summary judgment should have been granted generally becomes moot after a full trial on the merits. See, *Watson v. Amedco Steel, Inc.*, 29 F.3d 274 (7th Cir. 1994); *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997). The overruling of a motion for summary judgment does not decide any issue of fact or proposition of law affecting the subject matter of the litigation, but merely indicates that the court was not convinced by the record that there was not a genuine issue as to any material fact or that the party offering the motion was entitled to a judgment as a matter of law. *Whalen, supra.*

After trial, the merits should be judged in relation to the fully developed record, not whether a different judgment may have been warranted on the record at summary judgment. The rationale for this principle was aptly stated by the Ninth Circuit:

> To be sure, the party moving for summary judgment suffers an injustice if his motion is improperly denied. This is true even if the jury decides in his favor. The injustice arguably is greater when the verdict goes against him. However, we believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial.

*Locricchio v. Legal Services Corp.*, 833 F.2d 1352, 1359 (9th Cir. 1987). Zedek's first assignment of error is without merit.

### DIRECTED VERDICT

In his second assignment of error, Zedek claims the district court erred in denying his motion for a directed verdict. A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Martin v. Roth*, 252 Neb. 969, 568 N.W.2d 553 (1997); *Ethanair Corp. v. Thompson*, 252 Neb. 245, 561 N.W.2d 225 (1997); *Hawkes v. Lewis*, 252 Neb. 178, 560 N.W.2d 844 (1997). Zedek asserts that there was no competent evidence that Doe sustained any damage as a proxi-

mate result of any of his alleged acts of negligence and that, therefore, he was entitled to judgment as a matter of law. Doe contends that she presented competent expert testimony establishing that Zedek's failure to believe her and failure to treat her for the psychological effects of the sexual assault greatly contributed to her mental suffering and sense of helplessness.

In a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was the proximate cause of the plaintiff's alleged injuries. *Saporta v. State*, 220 Neb. 142, 368 N.W.2d 783 (1985). The plaintiff must prove each essential element of the claim asserted by a preponderance of the evidence. A defendant's negligence is, therefore, not actionable unless it is a proximate cause of the plaintiff's injuries or is a cause that proximately contributed to them. *Kozicki v. Dragon*, 255 Neb. 248, 583 N.W.2d 336 (1998); *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997); *Eiting v. Godding*, 191 Neb. 88, 214 N.W.2d 241 (1974). In other words, proximate causation requires proof necessary to establish that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff. *Saporta, supra.* See, *Kozicki, supra*; *Sacco, supra*; *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992).

In this case, Doe is alleging that she experienced mental suffering and a sense of helplessness as a proximate result of Zedek's negligence. Mental suffering and a sense of helplessness are injuries which are not plainly apparent and are demonstrated primarily by complaints of the victim. Such injuries are, therefore, subjective in nature and effect. See *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991). We have stated that where the character of an alleged injury is not objective, but, rather, subjective, the cause and extent of the injury must be established by expert medical testimony. *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994); *Turek, supra*; *Tarvin, supra*; *Eno v. Watkins*, 229 Neb. 855, 429 N.W.2d 371 (1988). See *Binkerd v. Central Transportation Co.*, 236 Neb. 350, 461 N.W.2d 87 (1990). Expert testimony is necessary

because subjective injuries may be inferred only from their symptoms. *Eiting, supra.* Consequently, medical expert testimony is required to determine the cause and extent thereof. *Id.*

Doe concedes that her injuries are subjective in nature and incapable of objective measurement. However, Doe contends that expert testimony is not necessary to "establish a causal connection between the Appellant's total lack of care and the Appellee's mental suffering." Brief for appellee at 13.

While it may be true that Doe experienced mental suffering, the causation of such injury is not within the common knowledge of a person lacking medical training. Additionally, the fact that Doe had a prior psychiatric history of depression and had been sexually assaulted further complicated the issue of causation. Whether Doe's subjective injuries stemmed from Zedek's claimed malpractice presented medically complicated questions requiring expert testimony. See, *Vallinoto v. DiSandro*, 688 A.2d 830 (R.I. 1997); *Turek, supra*; *Carmichael v. Carmichael*, 597 A.2d 1326, 1329 (D.C. App. 1991) (stating "[t]he issue of whether appellee's problems stemmed from appellant's malpractice, as opposed to other factors, 'present[s] medically complicated questions due to multiple and/or preexisting causes,' requiring expert testimony on the issue of causation"). Accordingly, the cause and extent of Doe's injuries must be substantiated by expert testimony.

Doe contends that four individuals testified to the causal connection between Zedek's failure to believe and treat her and the damages she suffered as a result. In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997); *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996); *Ochs v. Makousky*, 249 Neb. 960, 547 N.W.2d 136 (1996).

The first witness that Doe claims provided competent evidence on the issue of causation is Risseeuw. Risseeuw, as stated

previously, is Doe's caseworker. At trial, Risseeuw's employment and acquaintance with Doe were established. While Risseeuw may have given descriptive testimony of Doe's subjective symptoms, our review of the record fails to disclose Risseeuw's expressing any opinion that such symptoms were caused by Zedek's claimed malpractice.

Doe next asserts that Doris Payovich was qualified as an expert to give testimony regarding the causation of Doe's injuries. Payovich is the executive director of Keya Paha and Cherry Counties Mental Health Services. Payovich testified that she had been employed in that capacity for 11 years and that through her employment, she has known Doe "for a number of years." Payovich also testified to her education, which consisted of an associate's degree from Twenty-Nine Palms College and a bachelor of science degree from Eastern Montana College. Payovich did not, however, elaborate on the major course of study for either of these degrees. This was the extent of Payovich's expertise. Payovich's attempt to give her "conclusion" as to why Doe "was full of anger and frustration" was objected to by Zedek, and the objection was sustained by the trial court. Doe does not challenge this evidentiary ruling on appeal.

The third witness Doe asserts as competent to give expert testimony regarding the cause of her damages is Muller. Muller provided counseling for Doe from October 1993 through April 1994. At trial, Muller testified that she had obtained a master's degree in clinical psychology from Emporia State in Kansas in 1983. She explained that she is licensed to provide counseling and therapy "for anyone who needs it" and is qualified to perform "some limited testing." Muller testified that to maintain her license and certificate in counseling, she is required to participate in 32 hours of continuing education every 2 years. When Muller was asked if she had a specialty, she replied, "No, I don't."

This was the extent of Muller's qualifications as developed in the record. Without passing on whether these credentials are sufficient to qualify Muller as an expert witness competent to render an opinion on the causal relationship between psychiatric malpractice and a subjective injury, we find that the record

reveals that no such opinion was elicited. The only testimony given by Muller regarding the cause of Doe's injuries related to "what happened to [Doe] at the hospital." Nothing in her testimony distinguished any of Doe's injuries as being caused by Zedek's claimed malpractice as opposed to other causal factors.

The fourth witness and the only physician called by Doe was Dr. Richard Clary. Clary received his medical degree in 1970. From 1983 to 1986, Clary completed a residency program in psychiatry through Ohio State University. At the time of trial, Clary was board certified in the field of psychiatry and was the chair of the department of psychiatry at Mount Carmel Medical Center Hospital in Ohio.

Clary testified as to the generally recognized medical standard of care for the specialty of psychiatry. Clary testified that the psychiatric standard of care is a nationwide standard which does not differ from the local Nebraska standard. Clary further testified that in his opinion, within a reasonable degree of medical certainty, the care administered by Zedek to Doe did not meet that standard.

From our review of the record, Clary's testimony was competent evidence to meet Doe's burden of proof regarding the establishment of the generally recognized medical standard of care and a deviation from that standard by Zedek. See *Saporta v. State*, 220 Neb. 142, 368 N.W.2d 783 (1985). However, as we stated in *Saporta*, the plaintiff must also prove that any such deviation was a proximate cause of the plaintiff's alleged injuries.

Doe contends that Clary provided competent evidence to establish proximate cause. The only testimony given by Clary in the record which touches on the causation issue is as follows:

> Q: Based upon your experience and your training and expertise in the psychiatric field, would it be *possible* and could you expect that a person such as [Doe] may have some residual effects resulting from what happened to her at the hospital?
>
> . . . .
>
> A: Yes. I think it is very likely that that could happen.
>
> Q: Okay. And, based—again, based upon your experience in treating patients similar to this, would it be

unusual for such a patient to be fearful of being in a hospital again?

A: Yes. After an event like that it would certainly be—would not be unusual to be fearful or afraid of hospitalization, especially—a patient like that would assume that the hospital would probably be the—should be the safest place for them, and I think this would be very stressful for them.

. . . .

Q: Furthermore, it's—another note on the 25th would say requested a one-on-one with staff, expressed delusions and thoughts, tearful, expresses fear, reassured patient of safety on unit. Would an expression of fear be consistent with someone who has been sexually assaulted in the unit?

A: Yes, it could be.

Q: As a treating psychiatrist, would it be of interest to you that now this other nurse has another expression of delusion, the patient is tearful and obviously expressing fear? Would that be of relevance to you?

A: Yes. That would need to evaluated to see what the source is.

. . . .

Q: . . . [B]ut I note here, September 30th, 1993, we're still on a 15-minute suicide check?

A: Yes.

Q: Would that indicate that there are still some problems with this patient that evidently they feel that suicide check should be maintained?

A: Yes. There must be something that's causing them to worry about her safety to keep her on the checks, yes.

. . . .

Q: And again on October 5th, 1993, I see a statement that the plaintiff again reassured of her safety. I assume she's—we could speculate that she was concerned about her safety and had to be reassured. Would that be correct?

A: Yes. From that note she must have had some kind of concern or question for her safety.

(Emphasis supplied.)

The above-recited testimony of Clary fails to meet Doe's burden on the issue of causation for two reasons. First, the term

"possible" does not encompass either "reasonable medical certainty" or "reasonable probability," i.e., more likely than not. "Possible" is mere speculation, which is not sufficient. Although expert medical testimony need not be couched in the magic words "reasonable medical certainty" or "reasonable probability," it must be sufficient as examined in its entirety to establish the crucial causal link between the plaintiff's injuries and the defendant's negligence. See, *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998); *Shahan v. Hilker*, 241 Neb. 482, 488 N.W.2d 577 (1992). Medical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least "probable," in other words, more likely than not. See *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996). It is evident from a careful review of Clary's entire testimony that proximate causation was never established, probable or otherwise.

Second, Clary's testimony, which was objected to by Zedek, addresses residual effects "resulting from what happened to [Doe] *at the hospital*." (Emphasis supplied.) What happened to Doe at the hospital, i.e., the sexual assault, was not the basis of any claimed malpractice by Zedek. The record is devoid of any testimony which relates any of Doe's claimed damages to the malpractice of Zedek, as alleged by Doe.

Clary never distinguished the damages caused by Zedek's claimed malpractice from the damages caused by other factors, such as the sexual assault itself. See *Vallinoto v. DiSandro*, 688 A.2d 830 (R.I. 1997) (stating that in legal malpractice action brought against plaintiff's attorney, subjective declarations alone, without competent medical evidence tending to prove that any of plaintiff's ills were proximately caused by attorney's conduct and were not simply aftermath of recently concluded tumultuous marriage, were insufficient to withstand attorney's motion for directed verdict). Clary even admitted, at trial, that while it would not be unusual for someone who had been sexually assaulted to experience tearfulness, fear, and delusions, it would still be necessary to evaluate the patient to discover the source of those symptoms. At the time of his testimony, Clary had never examined Doe. Doe even conceded at oral argument that Clary

was in no position to establish proximate cause because he never saw her and that, therefore, the people in the best position to testify to proximate cause were the people who saw her every day. Based on this record, it is as likely as not that all of Doe's injuries were caused by the sexual assault in and of itself.

Resolving every controverted fact in favor of Doe and affording her the benefit of every reasonable inference deducible from the evidence, we find the record void of any expert testimony indicating that Zedek's negligence was a proximate cause of Doe's injuries or a proximately contributing cause. Consequently, the jury could only speculate as to the causation of Doe's injuries. The burden of proving a cause of action is not sustained by evidence from which a jury can arrive at its conclusions only by guess, speculation, conjecture, or choice of possibilities; there must be something more which would lead a reasoning mind to one conclusion rather than to another. *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d 212 (1995); *Shibata v. College View Properties*, 234 Neb. 134, 449 N.W.2d 544 (1989).

Doe failed to meet her burden of proof on the issue of causation, and therefore, the district court erred in denying Zedek's motion for a directed verdict. Before evidence is submitted to a jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it and upon whom the burden is imposed. *Richardson, supra; Novotny v. McClintick*, 206 Neb. 99, 291 N.W.2d 252 (1980). Where there is no basis for recovery under the evidence adduced at trial, submission to the jury constitutes error. See *Richardson, supra.*

## CONCLUSION

We find the foregoing analysis dispositive and, therefore, find it unnecessary to address Doe's other assignments of error. Accordingly, the judgment of the district court is reversed, and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.