Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/06/2018 09:17 AM CDT

Barbara Lewison, appellant, v.
Carol Renner, appellee.
___ N.W.2d ___

Filed January 12, 2018.    No. S-17-173.

1. **Motions for New Trial: Judges: Words and Phrases: Appeal and Error.** An appellate court reviews a denial of a motion for new trial for an abuse of discretion. A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

2. **Negligence: Proof.** To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages.

3. **Negligence: Motor Vehicles: Proof.** In an automobile negligence action, a plaintiff must prove each of the following elements: (1) that the defendant was negligent in one or more of the ways alleged, (2) that this negligence was a proximate cause of the collision, (3) that the collision was a proximate cause of some damage to the plaintiff, and (4) the nature and extent of that damage.

4. **Expert Witnesses.** When the character of an alleged injury is subjective rather than objective, a plaintiff must establish the cause and extent of the injury through expert medical testimony.

5. **Physicians and Surgeons: Expert Witnesses: Words and Phrases.** Although expert medical testimony need not be couched in the magic words "reasonable medical certainty" or "reasonable probability," it must be sufficient as examined in its entirety to establish the crucial causal link between the plaintiff's injuries and the defendant's negligence.

6. **____: ____: ____.** Medical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least "probable," in other words, more likely than not.

7. **Pleadings: Proof.** It is an elementary rule of pleading that matters admitted by the pleadings need not be proved.

8. **Pleadings.** Generally, an admission made in a pleading on which the trial is had is more than an ordinary admission, it is a judicial admission.

9. **Pleadings: Evidence: Waiver.** A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true.

10. **Pleadings: Intent.** It is important to consider the context in which a judicial admission is made.

11. ____: ____. A judicial admission does not extend beyond the intendment of the admission as clearly disclosed by its context.

12. **Negligence: Motor Vehicles: Damages.** When a defendant admits the collision caused "some injury" but expressly denies the nature and extent of the injuries and damages claimed, it is improper to construe the admission as conceding the collision caused all of the injuries claimed by the plaintiff.

13. **Verdicts: Appeal and Error.** In determining the sufficiency of the evidence to sustain a verdict, the evidence must be considered most favorably to the successful party, every controverted fact must be resolved in the successful party's favor, and the successful party is entitled to the benefit of any inferences reasonably deducible from the evidence.

14. **Juries: Verdicts: Presumptions.** When the jury returns a general verdict for one party, a court presumes that the jury found for the successful party on all issues raised by that party and presented to the jury.

15. **Trial: Expert Witnesses.** Triers of fact are not required to take opinions of experts as binding upon them, and determining the weight to be given expert testimony is uniquely the province of the fact finder.

Appeal from the District Court for Buffalo County: John H. Marsh, Judge. Affirmed.

Michael W. Meister for appellant.

Jeffrey H. Jacobsen and Nicholas R. Norton, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ., and Moore, Chief Judge.

Stacy, J.

After an automobile collision, Barbara Lewison sued Carol Renner for negligence, claiming injuries to her neck, back, and

wrists. Renner admitted her negligence caused the collision and also admitted the collision caused "some injury" to Lewison, but specifically denied the nature and extent of the injuries and damages claimed. The jury returned a general verdict for Renner. Lewison moved for a new trial, arguing the verdict was inadequate in light of Renner's admissions. The trial court denied the motion for new trial, and Lewison appeals. Finding no error, we affirm.

## I. FACTS

On December 21, 2012, in Kearney, Nebraska, Renner made a left turn in front of a vehicle being driven by Lewison and the two vehicles collided. Lewison was taken from the scene by ambulance and treated in the emergency room for complaints of neck and back pain.

In 2014, Lewison filed a negligence action against Renner in Buffalo County District Court. She alleged the collision caused injuries to her neck, back, and wrists. She further alleged that because of those injuries, she incurred medical expenses of $53,270 and experienced mental and physical pain and suffering.

Renner's operative answer admitted her negligence was the proximate cause of the collision with Lewison and further admitted "the collision was the cause of some injury to [Lewison]." But Renner "specifically denie[d] the nature and extent of the damage and injury claimed by [Lewison]."

### 1. EVIDENCE PRESENTED AT TRIAL

The case was tried to a jury. Lewison testified at trial, but recalled very few details of her medical history and was generally a poor historian. Most of the evidence regarding Lewison's medical history and treatment was provided through the video depositions of four medical experts. Of the four medical experts, three were Lewison's treating doctors and one was hired by Renner as a defense expert.

The only exhibits Lewison offered at trial were the video depositions of her doctors and the standard life expectancy

table. She did not offer any evidence regarding the amount of her medical expenses, nor did she offer evidence of lost earnings, property damage, or other special damages. At oral argument before this court, Lewison's attorney explained that the decision not to offer evidence of Lewison's medical expenses was a strategic one, designed to avoid anchoring the jury to a formulaic approach to calculating damages.

### (a) Family Doctor

Lewison's family doctor testified that 1 week after the collision, his office treated Lewison for tightness in her neck and bruising. Lewison returned to the family doctor 10 days later, reporting moderate neck spasms. CT scans of Lewison's head, neck, and thoracic spine were negative. She was referred to physical therapy and prescribed pain medications.

According to the family doctor, Lewison first complained to him about tingling in her hands on February 5, 2013, roughly 6 weeks after the collision. He ruled out any injuries related to her cervical spine and eventually diagnosed her with carpal tunnel syndrome and referred her to an orthopedic hand surgeon.

The family doctor was not asked to offer an opinion on whether the collision caused Lewison's neck and wrist complaints. But he did testify that her neck complaints were "consistent" with the collision and that the collision "could" have caused her wrist pain. When asked whether "some of" Lewison's medications were related to injuries suffered in the 2012 collision, he replied, "I think sometimes yes, sometimes no. She has other aches and pains elsewhere. But, yes, sometimes she takes it for back pain, or neck pain, or head pain." The family doctor summarized:

> I would say [Lewison] is a unique individual and maybe doesn't read the book as far as being a standard run-of-the-mill patient, and that she might have aches and pains that sometimes are hard to figure out no matter what day of the week it is.

(b) Hand Surgeon

Lewison's family doctor referred her to an orthopedic hand and microvascular surgeon in Kearney. The hand surgeon first saw Lewison in March 2013, approximately 3 months after the collision. At that time, Lewison complained of numbness and tingling in both hands. The hand surgeon testified that Lewison had undergone a carpal tunnel surgery in 1992, and he ultimately performed additional carpal tunnel surgeries in 2014. When asked whether the collision could have caused Lewison's wrist complaints, the hand surgeon replied, "Well, it's possible." Lewison's counsel then asked:

Q . . . [I]n this case, if we didn't have anything other than the description provided by Ms. Lewison of the accident, would it be more likely than not, then, to say that the accident caused . . . the carpal tunnel?

A Well, you know, I — I'm not sure that I can say that . . . .

When asked directly "whether or not the automobile accident of December 21st, 2012, caused or contributed . . . in any way" to Lewison's carpal tunnel, the hand surgeon replied:

Well, it — it's possible that the injuries to her hands caused enough swelling around those nerves that it increased the pressure, and it — and, but more than likely, there was probably some amount of preexisting problem. Obviously, she had previous surgery on the right, and people tend to be built fairly symmetrically, and so if you're going to have a — a problem with a tight tunnel for a nerve on one side, you're likely to have a similar problem on the other, unless there was some other reason for it, like, for example, an old fracture or something that changed the architecture of that tunnel. So if somebody has idiopathic carpal tunnel on one side, you would expect sometime within . . . the next several years they'll probably develop[] similar symptoms in the other. It's not 100 percent, but it's pretty common.

### (c) Pain Specialist

Eleven months after the collision, Lewison visited a pain specialist in Kearney for back pain. The pain specialist testified that Lewison had an extensive history of back problems, including: a back surgery when she was 19; a lumbar diskectomy and fusion surgery in 1989; and a series of nerve ablation (or rhizotomy) surgeries, the most recent of which was in 2011. With respect to the cause of Lewison's recent back pain, the pain specialist said "it's hard for me to help out on that." Lewison's counsel asked:

> Q So — so obviously, the car accident didn't cause her back problems. The question I guess we have here is did it aggravate the preexisting back problems that she had?
>
> A Yeah, so it's tough for me to, you know, give a definitive statement on that, and — and I, you know, I — definitely, it could have; but can anyone say, would she still have wound up needing the procedure I ultimately did, which is spinal cord stimulator implant, that's tough for me to say whether . . . her disease progression was going to keep going, whether — the way it was, and develop into this with or without the car accident. I think it would have been easier to say the car accident precipitated it if within that first month afterwards we were dealing with excruciating back pain; but for me, like you said, I was 11 months out, basically . . .
>
> Q Right, right.
>
> A . . . before I saw her.

### (d) Defense Expert

A neurologist was hired by Renner to examine Lewison and review her medical records. He testified that Lewison had a long history of neck, back, and wrist pain before the collision. But he also testified that Lewison "may well have had a temporary sprain or strain, but any persisting pain after four to six weeks was not caused by the accident." He ultimately

testified that the medical treatment Lewison received "from the emergency room and for four to six weeks or so after that was both appropriate and reasonably caused by the — necessitated by the accident." This expert did not testify about the cost of such treatment, and no bills for this period of treatment, or any other, were offered.

## 2. JURY INSTRUCTIONS AND VERDICT

Regarding Renner's admissions, the court instructed the jury:

[Renner] admits that she was negligent in the operating of a motor vehicle and that her negligence was the proximate cause of some injury to [Lewison]. [Renner] denies the nature and extent of [Lewison's] injury and damages.

Based upon this admission[,] the Court had found as a matter of law that [Renner] was negligent and her negligence was a proximate cause of the accident and you must accept those findings as true.

The court then instructed the jury that, in light of Renner's admissions, Lewison had the following burden of proof:

### B. BURDEN OF PROOF

Before [Lewison] can recover against [Renner], [Lewison] must prove, by the greater weight of the evidence[,] the nature and extent of her damages proximately caused by [Renner's] negligence.

### C. EFFECT OF FINDINGS

If [Lewison] has not met this burden of proof, then your verdict must be for [Renner].

On the other hand, if [Lewison] has met this burden of proof, then your verdict must be for [Lewison].

Regarding recoverable damages, the jury was instructed:

If you return a verdict for [Lewison], then you must decide how much money will fairly compensate [Lewison] for her injury.

I am about to give you a list of the things you may consider in making this decision. From this list, you must

only consider those things you decide were proximately caused by [Renner's] negligence:

1. The nature and extent of the injury, including whether the injury is temporary or permanent (and whether any resulting disability is partial or total);

2. The reasonable value of the medical (hospital, nursing, and similar) care and supplies reasonably needed by and actually provided to [Lewison] (and reasonably certain to be needed and provided in the future);

3. The physical pain and mental suffering [Lewison] has experienced (and is reasonably certain to experience in the future)[.]

The jury was given the standard preexisting injury instruction found in NJI2d Civ. 4.09.

The jury was also given two verdict forms: one finding in favor of Lewison with a line for the amount of damages, and the other finding in favor of Renner. No party objected to the jury instructions or the verdict forms, and no error is assigned to them on appeal.

During deliberations, the jurors sent a written question asking, in part, "What bills have been paid for so far?" After consulting with counsel, the court replied, "You have received all the evidence that has been presented. Keep deliberating." After further deliberations, the jury returned a unanimous verdict for Renner.

### 3. MOTION FOR NEW TRIAL

Lewison timely moved for a new trial claiming, among other things, that the jury's verdict was "inadequate" in light of Renner's admissions and was not sustained by sufficient evidence. Specifically, Lewison argued that because Renner had admitted her negligence proximately caused "some injury" to Lewison, the jury had to return a verdict for Lewison, even if they found minimal damages. Renner disagreed. She argued that by admitting the collision caused "some injury" but specifically denying the nature and extent of Lewison's claimed

injuries and damages, Lewison retained both the burden to prove which injuries were proximately caused by the accident and the burden to prove the nature and extent of her damages. Renner argued that Lewison failed to carry her burden of proof and that the jury properly returned a defense verdict.

The district court denied Lewison's motion for new trial and entered judgment on the jury's verdict. Lewison timely appealed, and we moved the case to our docket on our own motion.[1]

## II. ASSIGNMENT OF ERROR

Lewison assigns, restated, that the trial court erred in overruling her motion for new trial because the jury's verdict was inadequate in light of Renner's judicial admissions.

## III. STANDARD OF REVIEW

[1] An appellate court reviews a denial of a motion for new trial for an abuse of discretion.[2] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[3]

## IV. ANALYSIS

Lewison argues she is entitled to a new trial, because the jury's verdict was not sustained by sufficient evidence or was contrary to law.[4] She contends "[t]here is no explanation for a [defense] verdict . . . ,"[5] given that Renner admitted the collision was caused by her negligence, and also admitted the collision caused Lewison "some injury."

---

[1] See Neb. Rev. Stat. § 24-1106 (Reissue 2016).

[2] See *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017).

[3] *Id.*

[4] See Neb. Rev. Stat. § 25-1142(6) (Reissue 2016).

[5] Brief for appellant at 8.

To determine whether the trial court abused its discretion in denying Lewison's motion for new trial, we first set out Lewison's burden of proof in this negligence action.[6] Next, we consider how Renner's admissions affected that burden of proof. And finally, we consider the evidence adduced at trial to determine whether the jury's verdict was supported by the evidence.

## 1. Burden of Proof in Negligence Action

[2,3] To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages.[7] More specifically, in an automobile negligence action, a plaintiff must prove each of the following elements: (1) that the defendant was negligent in one or more of the ways alleged, (2) that this negligence was a proximate cause of the collision, (3) that the collision was a proximate cause of some damage to the plaintiff, and (4) the nature and extent of that damage.[8]

[4-6] When the character of an alleged injury is subjective rather than objective, a plaintiff must establish the cause and extent of the injury through expert medical testimony.[9] Although expert medical testimony need not be couched in the magic words "reasonable medical certainty" or "reasonable probability," it must be sufficient as examined in its entirety to establish the crucial causal link between the plaintiff's injuries and the defendant's negligence.[10] We have explained that "[m]edical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be

---

[6] See *Macke v. Pierce*, 266 Neb. 9, 661 N.W.2d 313 (2003).

[7] *Latzel v. Bartek*, 288 Neb. 1, 846 N.W.2d 153 (2014).

[8] See, e.g., NJI2d Civ. 2.01.

[9] See *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999).

[10] *Id.*

stated as being at least 'probable,' in other words, more likely than not."[11]

## 2. IMPACT OF ADMISSIONS ON BURDEN OF PROOF

[7-11] "'It is an elementary rule of pleading that matters admitted by the pleadings need not be proved.'"[12] Generally, an admission made in a pleading on which the trial is had is more than an ordinary admission, it is a judicial admission.[13] A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true.[14] It is important to consider the context in which a judicial admission is made.[15] A judicial admission does not extend beyond the intendment of the admission as clearly disclosed by its context.[16]

### (a) Admission of Negligence and Proximate Cause of Collision

In this case, Renner's answer admitted she was negligent in operating her vehicle and admitted her negligence was the proximate cause of the collision with Lewison. Based on those unconditional admissions, the trial court correctly found, as a matter of law, that Renner was negligent and that her negligence proximately caused the collision. The jury was instructed

---

[11] *Id.* at 975, 587 N.W.2d at 894, citing *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996).

[12] *Lange Building & Farm Supply, Inc. v. Open Circle "R", Inc.*, 210 Neb. 201, 205, 313 N.W.2d 645, 648 (1981), quoting *Peitz v. Hausman*, 198 Neb. 344, 252 N.W.2d 628 (1977).

[13] *Lange Building & Farm Supply, Inc., supra* note 12.

[14] See *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017).

[15] *City of Ashland v. Ashland Salvage*, 271 Neb. 362, 711 N.W.2d 861 (2006).

[16] *In re Estate of Radford, supra* note 14.

to accept those findings as true. As such, Renner's judicial admissions effectively relieved Lewison of her burden to prove the first two elements of her negligence action.[17]

### (b) Admission of "[S]ome [I]njury"

Lewison alleged that as a result of the collision, she "sustained injuries to her wrists, neck, and back." Renner's answer admitted the collision was the cause of "some injury" to Lewison, but specifically denied "the nature and extent of the damage and injury claimed" by Lewison.

We considered a similar admission in *Springer v. Smith*.[18] In that case, the defendant filed an answer admitting the collision was proximately caused by his negligence and further admitting the plaintiff "suffered some injury" in the collision, but specifically denying that the injuries were "of the nature and extent alleged" by the plaintiff.[19] We began our analysis by observing that under such a scenario, the proximate cause of the plaintiff's alleged damages remained a controverted issue, because the defendant had "disputed the claimed injuries in his pleadings and at the trial."[20] We observed that "[a]n admission of liability for an accident does not constitute an admission that all damages claimed by a plaintiff, even though undisputed in the record, were the proximate result of the collision."[21] And given the nature of the defendant's admissions in *Springer*, we reasoned it was proper for the trial court to instruct the jury that before the plaintiff could recover against the defendant, the plaintiff had the burden to prove, by a preponderance of

---

[17] See *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996) (finding negligence as matter of law equates to finding plaintiff established first two of four negligence elements, but issues of causation and damages remain for jury's determination).

[18] *Springer v. Smith*, 182 Neb. 107, 153 N.W.2d 300 (1967).

[19] *Id*. at 108, 153 N.W.2d at 301.

[20] *Id*. at 110, 153 N.W.2d at 302.

[21] *Id*.

the evidence, that "as a proximate result of the accident . . . the plaintiff sustained injuries and damages; and . . . [t]he extent of the damages, if any, which the plaintiff has sustained."[22]

[12] *Springer* illustrates that when a defendant admits the collision caused "some injury" but expressly denies the nature and extent of the injuries and damages claimed, it is improper to construe the admission as conceding the collision caused all of the injuries claimed by the plaintiff.[23]

Here, Renner admitted "some injury" but expressly denied that Lewison's injuries, or her damages, were of the nature or extent claimed by Lewison. The record does not suggest Renner was ever asked to specify what she intended by "some injury." But considering Renner's judicial admission in context, we conclude it did not relieve Lewison of her burden to prove both that her claimed injuries and damages were proximately caused by the collision and the nature and extent of her damages. In other words, the cause of Lewison's claimed injuries, as well as the nature and extent of her injuries and damages, were controverted by Renner. Lewison's arguments to the contrary lack merit.

### 3. Jury's Verdict Was
### Supported by Evidence

[13] In determining the sufficiency of the evidence to sustain a verdict, the evidence must be considered most favorably to the successful party, every controverted fact must be resolved in the successful party's favor, and the successful party is entitled to the benefit of any inferences reasonably deducible from the evidence.[24]

[14] Here, the jury returned a general verdict for Renner. When the jury returns a general verdict for one party, a

---

[22] *Id.*

[23] Accord *Golnick v. Callender*, 290 Neb. 395, 860 N.W.2d 180 (2015).

[24] *Holman v. Papio-Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994).

court presumes that the jury found for the successful party on all issues raised by that party and presented to the jury.[25] Consequently, we must treat the jury's verdict as having found that Lewison failed to meet her burden of proof on both of the contested issues: (1) whether the collision was the proximate cause of any injury or damage to Lewison and (2) the nature and extent of that damage.

We pause briefly to observe that the burden of proof instruction given in this case effectively combined the two controverted elements (proximate cause and nature/extent of the damages) into a single statement by instructing that Lewison had to prove "the nature and extent of her damages proximately caused by [Renner's] negligence." While the better practice is to separate out for the jury each element of a party's burden of proof, no one objected to combining these elements in the jury instructions, and no error has been assigned to the instructions on appeal.

On this record, considering the evidence most favorably to the successful party, we can find no abuse of discretion in the trial court's conclusion that the jury's verdict was supported by the evidence. Lewison's neck, back, and wrist complaints were subjective in nature and, as such, the cause and the nature/extent of such injuries had to be proved through expert medical testimony.[26] At trial, her treating doctors' opinions on causation were equivocal and were couched in terms of possibilities, rather than probabilities. Lewison does not attempt to argue otherwise on appeal, and instead, she relies exclusively on the opinion of the defense expert who testified that the medical treatment Lewison received "from the emergency room and for four to six weeks or so after that was both appropriate and reasonably caused by the — necessitated by the accident." Lewison argues that in light of this testimony, the

---

[25] *Balames v. Ginn*, 290 Neb. 682, 861 N.W.2d 684 (2015).

[26] See *Doe v. Zedek, supra* note 9.

jury had no choice but to return a verdict in Lewison's favor. We disagree.

[15] Triers of fact are not required to take opinions of experts as binding upon them, and determining the weight to be given expert testimony is uniquely the province of the fact finder.[27] Here, the jury reasonably could have given more weight to Lewison's own doctors than to the defense expert, and therefore concluded Lewison had failed to meet her burden of proof on causation. And even if the jury did give weight to the defense expert's testimony, it reasonably could have concluded Lewison failed to meet her burden of proof regarding the nature and extent of her damages, because the record contains no evidence from which the jury could determine the cost of Lewison's medical treatment during the 4- to 6-week period after the collision.

The record amply supports the conclusion that Lewison failed to meet her burden of proof regarding one or both of the contested issues: the cause of her injuries and the nature and extent of her damages. The trial court did not abuse its discretion in overruling Lewison's motion for new trial.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Lewison's motion for new trial.

AFFIRMED.

WRIGHT, J., not participating.

---

[27] *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993).