Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/02/2024 09:04 AM CST

RONNFELDT FARMS, INC., A NEBRASKA CORPORATION,
APPELLANT AND CROSS-APPELLEE, V. JASON ARP, KNEE
DEEP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY,
BRIAN FROST, AND FROSTY'S DRAGLINE, LLC,
A NEBRASKA LIMITED LIABILITY COMPANY,
APPELLEES AND CROSS-APPELLANTS.

___ N.W.2d ___

Filed December 19, 2023.    No. A-23-116.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

2. **Summary Judgment: Proof.** A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law.

3. **Trial: Evidence.** Where reasonable minds could draw different conclusions from the facts presented, there is a triable issue of material fact.

4. **Evidence: Proof.** Failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

5. **Joint Ventures: Partnerships: Contribution.** A joint venture is in the nature of a partnership and exists when (1) two or more persons contribute cash, labor, or property to a common fund (2) with the intention of entering into some business or transaction (3) for the purpose of

making a profit to be shared in proportion to the respective contributions and (4) each of the parties has an equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other.

6. **Joint Ventures: Proof.** The moving party bears the burden to prove a joint venture or enterprise exists by clear and convincing evidence.

7. **Joint Ventures: Intent.** The relationship of joint venturers depends largely upon the intent of the alleged parties as manifested from the facts and circumstances involved in each particular case.

8. **Joint Ventures.** A joint venture can exist only by voluntary agreement of the parties and cannot arise by operation of law. Even a close relationship between two parties does not create an implied joint venture.

9. **Appeal and Error.** Generally, an issue not presented to the trial court may not be raised on appeal.

10. **Pleadings.** Pleadings frame the issues upon which the cause is to be tried and advise the adversary as to what the adversary must meet.

11. ____. The issues in each case will be limited to those which are pled.

12. **Election of Remedies.** Parties are permitted to plead alternative theories of recovery unless the theories are so inconsistent that a party cannot logically choose one without renouncing the other.

13. **Negligence: Proof.** To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages.

14. **Negligence.** The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty.

15. **Negligence: Words and Phrases.** A "duty" is an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another.

16. **Negligence.** If there is no duty owed, there can be no negligence.

17. ____. An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.

18. ____. In a negligence action, in order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence.

19. ____. The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter.

20. **Trial: Waiver: Appeal and Error.** A party may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error.

Appeal from the District Court for Burt County: BRYAN C. MEISMER, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Stephen D. Mossman and Andrew R. Spader, of Mattson Ricketts Law Firm, for appellant.

Joel D. Nelson and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., and David V. Drew, of Drew Law Firm, P.C., L.L.O., for appellees.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Ronnfeldt Farms, Inc., filed an action against Brian Frost and his company, Frosty's Dragline, LLC (collectively Frost), in the district court for Burt County, Nebraska, asserting that Frost was a subcontractor to Jason Arp and his company, Knee Deep, LLC (collectively Arp). Following discovery, Ronnfeldt Farms adjusted its allegation to claim that Frost was engaged in a joint venture with Arp. Ronnfeldt Farms argued that as a joint venturer, Frost was liable for Arp's breach of contract and negligence in the manner in which Frost pumped manure from a hog confinement facility that, according to Ronnfeldt Farms, led to an outbreak of disease. Additionally, Ronnfeldt Farms asserted that Frost owed Ronnfeldt Farms an independent duty of care that was also breached during the pumping job.

In September 2022, Frost filed a motion for summary judgment on all of Ronnfeldt Farms' claims, which was granted by the district court. Ronnfeldt Farms appeals from the court's order. On cross-appeal, Frost asserts that the district court erred in failing to hold that Ronnfeldt Farms could not prove proximate causation as a matter of law. Frost also alleges that Ronnfeldt Farms committed spoliation and that thus, Frost is entitled to an adverse inference against Ronnfeldt Farms.

For the reasons set forth below, we affirm the district court's order granting summary judgment as to Ronnfeldt Farms' joint venture breach of contract and negligence actions but reverse the court's order regarding the independent negligence claim. We remand the cause for further proceedings.

## II. BACKGROUND

### 1. Factual Background

#### (a) 2020 Contract

Ronnfeldt Farms is a Nebraska corporation with its principal place of business in Burt County. As a food producer, Ronnfeldt Farms is engaged in commercial activities, including a swine farrow to finish operation and a retail multiplying genetics business. Ronnfeldt Farms owns Windy Hill sow facility (Windy Hill), also located in Burt County, which houses the Ronnfeldt Farms' breeding sows and gilts.

In October 2020, Ronnfeldt Farms entered into an oral contract with Arp to provide manure pumping services for Windy Hill. Generally stated, manure pumping at Windy Hill consists of agitating and pumping manure from a pit located beneath the swine barn. The manure is pumped through a hose to nearby farm fields and injected into the fields for fertilizer.

Arp had pumped manure for Ronnfeldt Farms since 2016. A written contract was never created for the annual pumping work. In October 2020, Tavis Christiansen, a 50-percent owner in and operator of Ronnfeldt Farms, reached out to Arp to discuss that year's manure pumping schedule. Christiansen told Arp that he did not want pumping to extend "more than a couple days into November."

To meet the requested early November deadline, Arp reached out to Frost to see if Frost could help pump at Windy Hill. Frost operated his own manure pumping business. Arp and Frost had been friends for roughly 30 years. Both were involved with raising and selling hogs. During the pumping

season, they were in frequent contact with each other, talking 3 to 4 days a week. Although the companies are separate entities with their own customers, Arp and Frost have a history of assisting each other on large or time-sensitive jobs. No written agreements or subcontractor agreements exist between Arp and Frost.

Frost agreed to help Arp with pumping at Windy Hill. Frost informed Arp that Frost was currently working at a swine finishing barn in Colfax County, Nebraska, and asked what needed to be done prior to arriving at Windy Hill. Arp told Frost that the equipment needed to be cleaned, dried, and disinfected for a specific period of time prior to pumping. Frost thought Arp stated the proper period was 24 hours, whereas Arp believes he stated the proper period was 48 hours. In any event, Frost's vehicles and equipment were disinfected twice before arriving at Windy Hill, which was unusual in Frost's practice. Frost testified he disinfected twice "just because we were going to a sow farm. That was the only reason." He also testified that the first occasion of cleaning and disinfecting occurred 2 calendar days prior to pumping at Windy Hill.

(b) Biosecurity Protocols at Windy Hill

In accord with the swine industry generally, Ronnfeldt Farms monitors biosecurity closely at its various hog barns and facilities. Among other concerns, there is a risk of diseases such as porcine reproductive and respiratory syndrome (PRRS) transferring from one farm to another. A predominant goal of swine producers is to keep PRRS out of every barn, as it seriously impacts swine health and overall production. PRRS is a foreign animal disease, specifically a virus, that causes failure of breeding stock and respiratory tract illness in young pigs. PRRS can be transmitted through physical contact or airborne exposure. The virus can be carried by hogs or other animals, people accessing the farm, vehicles or equipment entering the farm, and dust in the air. Even with

reasonable biosecurity measures in place, there is still a risk of PRRS exposure in hog farms.

While the swine industry attempts to prevent PRRS outbreaks in all barns, sow barn biosecurity is given the highest priority. This is because sows and newborn piglets are more affected by PRRS than other pigs.

Biosecurity protocols vary with each farm, and these protocols are ever changing. In his deposition, Christiansen stated that Ronnfeldt Farms has two key requirements for outside contractors: (1) Pumping personnel should not pump at another hog facility directly before coming to Ronnfeldt Farms, but, instead, should pump cattle manure from cattle barns, dairy barns, or feedlots, and (2) pumping personnel must stay out of the barns. Christiansen was less concerned regarding the downtime between when the equipment had been cleaned following the last job and when pumping began at Windy Hill. His concern was centered on what residue remained inside the pumping equipment and hoses. He elaborated that the "solution to pollution is dilution," meaning that pumping cattle manure flushes the equipment and hoses of viruses potentially transferable and harmful to hogs. In other words, whatever residue left from the prior pumping job involving cattle that is released through the hoses on the current job is not likely to infect the sows and newborn pigs located at the Windy Hill facility.

Christiansen testified he verbally informed Arp of Ronnfeldt Farms' specific biosecurity expectations in 2016 and reminded Arp of those requirements every year thereafter during their scheduling conversations. However, there was no evidence that Ronnfeldt Farms ever provided Arp with any written biosecurity protocols.

In October 2020, Christiansen texted Arp, asking him whether Frost was "aware of the [b]iosecurity expectations before, during and on completion" of manure pumping at Windy Hill. Christiansen told Arp that if Frost was not aware of the expectations, they should have a conference call to

discuss and review biosecurity measures. Arp responded, "They are aware of [b]iosecurity . . . [Frost] will do whatever I tell him to do." Based on Arp's representations, Ronnfeldt Farms did not organize or host a biosecurity conference call with Arp or Frost.

Unbeknownst to Ronnfeldt Farms, on November 4, 2020, Frost pumped manure at a swine finishing barn in Colfax County. This was the last job Frost performed before pumping at Windy Hill. Frost informed Arp that his crew was currently pumping manure at a swine finishing barn. However, no evidence exists in the record that would indicate that anyone associated with Arp told Frost or his employees of any requirement that his crew not pump at Windy Hill unless it had pumped at a cattle facility immediately before.

(c) November 2020 Pumping at Windy Hill

Christiansen emailed Arp a schedule and two maps of Windy Hill and designed a pumping plan with Arp through phone calls and text messages. Before pumping began, there was no communication between Ronnfeldt Farms and Frost. The 2020 Windy Hill manure pumping began on November 6 and concluded on November 9. Frost arrived on November 7, and both Arp and Frost had teams pumping throughout the weekend. According to the testimony of the manager in charge of Windy Hill, he normally would have personally met Frost's crew at the gate and discussed biosecurity protocols. However, in this instance, he allowed a member of Arp's crew to let Frost's group in. As a result, when Frost's crew arrived, the manager conducted no inspection of Frost's equipment and no review of biosecurity protocols; nor did he inquire where Frost had last pumped. Any discussion of biosecurity would have involved only the crews of Arp and Frost.

When pumping was completed, Arp sent several invoices to Ronnfeldt Farms. All but one invoice was paid. Frost never sent any invoices or billing materials to Ronnfeldt Farms. Instead, Frost told Arp how many gallons Frost pumped, and

Arp added that amount into its invoice calculations. The plan was that once Ronnfeldt Farms paid Arp, Arp would pay Frost. This was consistent with Arp and Frost's arrangement where they met once a year to discuss the jobs they collaborated on and determined how to "settle up for the year."

Frost was never fully compensated for Frost's portion of the pumping at Windy Hill. At his deposition, Frost testified that Arp told him that Ronnfeldt Farms had not fully paid Arp for the job. Frost "did not feel it was right . . . to collect money when [Arp] did not collect money." Arp did, however, write Frost a check for an undisclosed amount.

### (d) PRRS Outbreak

From November 11 to November 13, 2020, Windy Hill employees began to observe clinical symptoms of PRRS in sows in the farrowing barn. Blood samples taken from symptomatic sows tested positive for PRRS. Ronnfeldt Farms also conducted antibody testing on the pigs. The tests revealed that the pigs were negative for PRRS antibodies. This narrowed the timeline for exposure, as the earliest a pig's immune system makes antibodies is 5 days after exposure.

Ronnfeldt Farms conducted an audit in an attempt to locate the origin of the PRRS outbreak. The audit reviewed employee illnesses and paid time off, logsheets documenting visitors, grounds maintenance records, barn entry protocols, and sanitation measures. External video footage of the pumping teams' activities was reviewed as well.

The specific genetic sequence of PRRS detected in the Windy Hill sows was compared to other genetic sequences associated with other outbreaks in the area and documented in an authoritative database, but no matches were detected. Ronnfeldt Farms also took samples from areas and objects involved in the pumping operation, such as the pit ports where Arp and Frost pumped, but those tests were negative for PRRS.

The record suggests that during the audit, Ronnfeldt Farms learned that Frost had pumped at the Colfax County swine finishing barn immediately prior to pumping at Windy Hill. Veterinarian Luke Strehle, employed by Ronnfeldt Farms, attempted to investigate a possible connection between the Windy Hill PRRS outbreak and Frost's Colfax County job. Strehle asked the owner of the Colfax County pigs if he could collect samples from the Colfax County farm to test for PRRS and, if they tested positive, compare their genetic sequence to the Windy Hill sequence. In his deposition, Strehle testified that the owner was comfortable with Strehle's taking samples only if Frost was present. Strehle further testified that Frost refused to go and that therefore, he did not have an opportunity to take or test samples. Frost, however, testified that the owner simply did not consent to Strehle's conducting the test.

Nonetheless, Frost and the owner decided to take a sample from the Colfax County farm and test it for PRRS. The sample was positive, but the sample was not genetically sequenced. Christiansen concluded that the results of the audit demonstrate that the pumping teams were responsible for the outbreak.

## 2. Procedural Background

Ronnfeldt Farms' complaint named Arp and Frost as defendants. Two causes of action were listed: one for breach of contract and the other for negligence. In its complaint, Ronnfeldt Farms alleges that Frost was a subcontractor to Arp and Arp's contract with Ronnfeldt Farms. Ronnfeldt Farms further argues that by violating biosecurity protocols, Arp and Frost breached the contract. In addition, Ronnfeldt Farms alleges that Arp and Frost owed a duty to Ronnfeldt Farms to follow biosecurity protocols and that by failing to do so, they were negligent.

The record suggests that sometime during discovery, Ronnfeldt Farms abandoned its subcontractor theory in favor of a joint venture theory, claiming that Arp and Frost engaged in a joint venture when they collaborated on the Windy Hill

pumping job. Ronnfeldt Farms did not file an amended pleading to reflect this shift in its theory of the case.

In September 2022, Frost filed a motion for summary judgment. Ronnfeldt Farms opposed the motion and filed a brief that detailed its joint venture theory for the first time. Ronnfeldt Farms' subcontractor theory was also briefly mentioned, but this was mainly to acknowledge that both Arp and Frost had denied that Frost was Arp's subcontractor.

A hearing on the motion was held in January 2023, and that same month, the district court entered an order granting Frost's motion for summary judgment. On the breach of contract cause of action, the court first found that there was no contract between Ronnfeldt Farms and Frost. The court also found that Frost was not a subcontractor and that Arp and Frost were not involved in a joint venture. Thus, the court concluded that Frost could not be held liable for any breach of contract committed by Arp. On Ronnfeldt Farms' independent negligence claim against Frost, the district court found that while Frost had a duty to Arp, that duty did not extend to Ronnfeldt Farms. The court concluded there was no genuine issue of material fact and granted summary judgment for Frost.

That same month, but prior to the filing of the court's order on summary judgment, Ronnfeldt Farms and Arp filed a stipulation and a joint motion to dismiss Arp from the case with prejudice. The district court granted the motion, and thus, from that point forward, Frost became the sole defendant remaining in the case.

Ronnfeldt Farms appeals, and Frost cross-appeals.

### III. ASSIGNMENTS OF ERROR

In its brief, Ronnfeldt Farms makes 12 assignments of error, which consolidated and restated assert that the district court erred in (1) misidentifying undisputed facts and applying the wrong standard of review for summary judgment, (2) finding that no joint venture existed between Arp and Frost, (3) not granting Ronnfeldt Farms leave to amend its complaint,

and (4) determining that Frost did not owe an independent legal duty to Ronnfeldt Farms.

On cross-appeal, Frost assigns that the district court erred in failing to conclude that (1) Ronnfeldt Farms cannot demonstrate Frost proximately caused the damages as a matter of law and (2) Ronnfeldt Farms' failure to preserve certain evidence warrants an inference against Ronnfeldt Farms.

## IV. STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## V. ANALYSIS

[2-4] A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* Where reasonable minds could draw different conclusions from the facts presented, there is a triable issue of material fact. *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019). Failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Freeman v. Hoffman-La Roche, Inc.*, 300 Neb. 47, 911 N.W.2d 591 (2018).

## 1. UNDISPUTED FACTS AND SUMMARY
### JUDGMENT STANDARD

Ronnfeldt Farms argues that the district court misidentified undisputed facts and applied the wrong standard of review for summary judgment. We find these arguments unpersuasive.

Ronnfeldt Farms asserts that the following two facts, which were deemed undisputed by the district court, are disputed: "At some point in the days leading up to the Windy Hill pumping in 2020, [Arp] asked [Frost if he] would help pump at Windy Hill," and "[Frost] had no customer-contractor relationship or agreement with [Ronnfeldt Farms]." Ronnfeldt Farms argues that these facts are disputed because Arp and Frost were engaged in a joint venture. Our analysis below addresses and rejects Ronnfeldt Farms' joint venture theory. Further, after reviewing the record, we find that these facts are undisputed. Both Arp and Frost testified that Arp asked Frost to help pump at Windy Hill. No one testified or alleged otherwise. In fact, Christiansen admitted that he approved of Arp's request to ask Frost for help. The evidence also demonstrates that Frost did not form a contractual relationship or agreement with Ronnfeldt Farms. Frost did not communicate with Ronnfeldt Farms until pumping had begun. Thus, because the evidence showed these facts were undisputed, this argument fails.

Additionally, Ronnfeldt Farms argues that the district court applied the wrong standard of review for summary judgment. Specifically, Ronnfeldt Farms alleges that the court only reviewed the undisputed facts in a light most favorable to Ronnfeldt Farms. To support its argument, Ronnfeldt Farms points to the following sentence in the court's summary judgment order: "But in reviewing the *undisputed facts* in a light most favorable to [Ronnfeldt Farms] here, the Court does not agree that . . . Arp and Frost were involved in a Joint Venture with regard to the work done at Windy Hill." (Emphasis supplied.)

The record indicates that the district court's use of the phrase "undisputed facts" was inadvertent. Clerical errors "are defined as errors which result 'from a minor mistake or inadvertence' especially in 'writing or copying something.'" *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 473, 748 N.W.2d 1, 11-12 (2008) (quoting Black's Law Dictionary 582 (8th ed. 2004)). The district court correctly stated the summary judgment standard of review earlier in its order:

> Summary judgment is justified when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. . . . On a motion for summary judgment, the evidence is to be viewed most favorably to the nonmoving party. . . . The question at that stage "is not how a factual issue is to be decided, but whether any real issue of material fact exists."

(Citations omitted.) The court reviewed both disputed and undisputed facts in its order. Other than the offending phrase Ronnfeldt Farms has pointed out, there is nothing to suggest that the district court declined to review all of the evidence in a light most favorable to Ronnfeldt Farms. We, therefore, find that the district court applied the correct standard of review.

## 2. Ronnfeldt Farms' Joint Venture Claim

### (a) Arp and Frost Were Not Engaged in a Joint Venture

[5-8] Ronnfeldt Farms next argues that there is a genuine dispute of material fact as to whether Arp and Frost were engaged in a joint venture. A joint venture is in the nature of a partnership and exists when (1) two or more persons contribute cash, labor, or property to a common fund (2) with the intention of entering into some business or transaction (3) for the purpose of making a profit to be shared in proportion to the respective contributions and (4) each of the parties has an equal voice in the manner of its performance and control of the agencies used therein, though one may entrust performance to the other. *Kohout v. Bennett Constr.*, 296 Neb. 608,

894 N.W.2d 821 (2017). The moving party bears the burden to prove a joint venture or enterprise exists by clear and convincing evidence. *Id.* The relationship of joint venturers depends largely upon the intent of the alleged parties as manifested from the facts and circumstances involved in each particular case. *Id.* A joint venture can exist only by voluntary agreement of the parties and cannot arise by operation of law. Even a close relationship between two parties does not create an implied joint venture. *Id.*

The district court found that Arp and Frost both contributed labor and entered into a business transaction for the purpose of making a profit. However, the court held that Frost did not have an equal voice or equal right to control the performance at Windy Hill. As such, the court determined that Arp and Frost were not engaged in a joint venture.

We begin our analysis by noting that the joint venture claim was not raised by Ronnfeldt Farms in its complaint or in any amended pleadings. The joint venture argument is first raised in Ronnfeldt Farms' brief in opposition to Frost's motion for summary judgment.

[9] Generally, an issue not presented to the trial court may not be raised on appeal. See *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021). We question whether Ronnfeldt Farms should have made a motion for leave to amend its complaint and plead the joint venture theory formally. However, the Nebraska Supreme Court has recognized that even when claims are not clearly articulated by an appellant in his or her pleadings or at trial, the claims may still be considered by an appellate court if the district court evaluated them. See *V.C. v. Casady*, 262 Neb. 714, 634 N.W.2d 798 (2001). Therefore, because the district court evaluated the joint venture theory, we, too, consider this argument.

Viewing the evidence in a light most favorable to Ronnfeldt Farms, we find that the first three joint venture elements are met. The evidence clearly shows that both Arp and Frost

contributed labor and property to the Windy Hill pumping job. Arp and Frost brought their own teams and their own pumping equipment to Windy Hill. In addition, both Arp and Frost had an intention of entering into a mutually beneficial transaction. Arp asked Frost for assistance to meet Ronnfeldt Farms' early November 2020 deadline, and in return, Frost expected compensation. Further, for Arp and Frost, the purpose of the Windy Hill transaction was to share profits in proportion to their respective contributions. When the Windy Hill pumping was completed, Frost provided Arp with a statement of the total amount of gallons Frost had pumped, and Arp added that amount to the invoices sent to Ronnfeldt Farms. Once Ronnfeldt Farms paid Arp in full, Arp intended to pay Frost a portion respective to the amount of gallons Frost pumped.

However, even when viewing the evidence in a light most favorable to Ronnfeldt Farms, we find that Ronnfeldt Farms failed to demonstrate the existence of a material issue of fact regarding the equal voice element. Arp was the dominant voice in the performance of and control over the Windy Hill pumping job because of its longstanding business relationship with Ronnfeldt Farms. Ronnfeldt Farms was Arp's customer and had been since 2016. Before assisting with pumping at Windy Hill in 2020, Frost had never pumped for Ronnfeldt Farms.

Arp and Ronnfeldt Farms planned the 2020 pumping job together through emails, phone calls, and text messages. Frost was not a part of these conversations and did not communicate with Ronnfeldt Farms in any manner until the 2020 pumping job commenced. Arp also told Ronnfeldt Farms, "[Frost] will do whatever I tell him to do." One of Arp's team members met Frost's team members at the Windy Hill gates to let them in and instruct them on biosecurity protocols. Further, Arp, not Frost, controlled the payment plan for the job. Once pumping was completed, Frost informed Arp of the total gallons Frost pumped. Arp then independently calculated

a total charge for Ronnfeldt Farms and sent invoices to be paid directly to Arp. It was expected that once Ronnfeldt Farms paid Arp, Arp would then pay Frost.

Ronnfeldt Farms asserts that Frost had an equal voice because Frost had the freedom to decide whether to assist Arp and because Frost disinfected their equipment more times than Arp instructed. We disagree. These facts do not speak to Frost's control over the Windy Hill pumping job. They speak merely to Frost's control over its own schedule and equipment. Ronnfeldt Farms also asserts that Frost had an equal voice because Frost spoke with Ronnfeldt Farms' veterinarian and declined to assist in the postoutbreak audit. Assuming without deciding that this allegation is true, this postpumping event does not indicate that Frost exercised control over the actual pumping job at Windy Hill.

Arp and Frost's history of assisting each other on jobs from time to time appears to reflect an informal, friendly relationship between similar businesses rather than a joint venture, at least as it relates to the facts of this case. There is no evidence that either party defendant intended to form a joint venture. Arp and Frost own two distinct and separate manure pumping companies. They each have their own incorporated names and their own customers. They do not jointly own equipment or employ the same team members. Significantly, Frost did not have an equal voice on the Windy Hill pumping job. For all these reasons, we find that the district court did not err in finding there was no joint venture here.

In so holding, we also reject Ronnfeldt Farms' argument that this case requires a holding similar to the one in *Fangmeyer v. Reinwald*, 200 Neb. 120, 263 N.W.2d 428 (1978). In *Fangmeyer*, the Supreme Court held that because it could not be said as a matter of law that the informal business relationship at issue did not constitute a joint venture, it was not error to submit the issue to a jury. Here, although Arp and Frost's relationship is informal, the evidence is clear that their relationship does not meet all of the elements

required to constitute a joint venture as it relates to the Windy Hill pumping job. Thus, this argument fails. Consequently, since no joint venture existed, Frost cannot be held liable for any breach of contract or negligence committed by Arp. The district court did not err by granting summary judgment on these claims.

Additionally, because we have found that no joint venture existed, we need not reach Frost's contention that the dismissal of one joint venturer releases all joint venturers.

### (b) District Court Not Required to Define Arp and Frost's Relationship Outside of Theories Asserted in Pleadings

[10-12] Ronnfeldt Farms also argues that without defining the legal relationship between Arp and Frost, the district court could not make a finding as to whether any legal duties existed between Arp and Frost and therefore erred in granting summary judgment. We disagree. Pleadings frame the issues upon which the cause is to be tried and advise the adversary as to what the adversary must meet. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003). The issues in each case will be limited to those which are pled. *Id.* Additionally, parties are permitted to plead alternative theories of recovery unless the theories are so inconsistent that a party cannot logically choose one without renouncing the other. See *Thurston v. Nelson*, 21 Neb. App. 740, 842 N.W.2d 631 (2014).

Applying those propositions of law here, Ronnfeldt Farms had the responsibility to plead what contractual or legal relationship existed between Arp and Frost. Ronnfeldt Farms could have pled alternative theories of recovery beyond subcontracting and joint venture, but failed to do so. Therefore, the district court did not err by declining to address issues that were not pled by the parties or presented to it for disposition.

Based on this finding, we need not address Frost's theoretical argument that if Arp and Frost were in a principal-agent relationship, Arp's dismissal bars Ronnfeldt Farms from any recovery against Frost.

### 3. Amending Complaint

Ronnfeldt Farms also argues that the district court should have granted Ronnfeldt Farms leave to amend its complaint and erred in limiting its review of the joint venture theory. We disagree on both fronts. First, the record provided on appeal does not contain a motion to amend or reform the pleadings as argued by Ronnfeldt Farms during oral argument. Moreover, our review of the hearing on the motion for summary judgment also reveals no oral motion to amend. Instead, Ronnfeldt Farms acknowledged that a contractor-subcontractor relationship between Arp and Frost did not exist, then argued that they were involved in a joint venture. The court need not grant leave to amend or reform the pleadings without receiving a motion asking it to do so. In any event, the district court did not limit its review of the joint venture theory. The court directly addressed this issue in its order, stating: "In [its] brief, [Ronnfeldt Farms] argues that . . . Frost, if not a subcontractor, must have been involved in a joint venture. Though this cause of action is not pled in the Complaint, the Court will address that argument as well." The court then proceeded to evaluate the joint venture argument in full, as outlined above. These assignments are without merit.

### 4. Ronnfeldt Farms' Independent Negligence Claim Against Frost

#### (a) Frost Owed Ronnfeldt Farms Duty of Reasonable Care

[13-16] Ronnfeldt Farms also argues that the district court erred in holding that Frost did not owe an independent legal duty to Ronnfeldt Farms. To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages. *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540 (2018). The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty. *McReynolds v. RIU Resorts & Hotels*, 293 Neb. 345, 880 N.W.2d 43

(2016). A "duty" is an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another. If there is no duty owed, there can be no negligence. *Id.*

[17-19] The Supreme Court has explained that an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm. *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010). In a negligence action, in order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence. *Perry v. Buchanan*, 31 Neb. App. 715, 988 N.W.2d 537 (2023) (petition for further review denied May 23, 2023). The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. *Id.* Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter. *Id.*

The district court found that Frost had a duty to Arp and that Arp had a duty to Ronnfeldt Farms. Specifically, the court found that Frost's duty to Arp was to meet the expectations Arp provided regarding pumping at Windy Hill. It was deemed unreasonable to expect Frost to go beyond Arp and coordinate directly with Ronnfeldt Farms. Thus, the court concluded that "it is not reasonable to carry Frost's duty to Arp beyond Arp and to [Ronnfeldt Farms] here."

In its brief on appeal, Ronnfeldt Farms argues Frost owed a duty of reasonable care to Ronnfeldt Farms. We agree. The standard of care owed by a manure pumping company to the owner of a facility being pumped and whether the pumper's actions satisfied that standard are issues of fact for the jury to resolve. As an actor at Ronnfeldt Farms' facility, Frost had a general duty to exercise reasonable care when its conduct created a risk of physical harm. See *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra.* We note that in Frost's answer,

Frost admits that there was a general duty to exercise reasonable care in the performance of manure pumping operations. Thus, even though no specific contractual relationship was identified between Ronnfeldt Farms and Frost, the district court erred in ruling Frost owed no duty to Ronnfeldt Farms.

However, we agree with the district court's findings to the extent that the court found that Frost did not necessarily have a duty to inquire of Ronnfeldt Farms as to its biosecurity protocols. Relying on Arp alone for that information was sufficient unless the general standard of care would demonstrate that Frost knew or should have known that additional steps should have been taken as part of a general standard of care in the industry as it relates to the pumping of manure at a sow barn.

Frost's contention that this negligence claim is truly a breach of contract claim is without merit. Ronnfeldt Farms does not premise this claim on a failure to meet contractual obligations. This claim is based on the general duty of reasonable care. Ronnfeldt Farms alleges that Frost breached their duty of care when pumping at Windy Hill immediately after pumping at a different hog farm, due to the risk of physical harm this practice posed based on the possibility that diseases such as PRRS could have been carried within Frost's equipment. There is no implication of contractual duties or obligations here.

In addition, to the extent that Frost argues that public policy surrounding principal-agent relationships requires us to resist imposing a duty here, we reject that argument as well. Here, Frost alludes to the idea that Frost was an agent to Arp, but elsewhere, Frost refuses to explicitly adopt that relationship in their brief. In their answer, Frost admits that they have "a general duty to exercise reasonable care in the performance of manure pumping operations being performed for a third party." Determining that Frost owed Ronnfeldt Farms a duty of reasonable care does not conflict with public policy. This is not a duty affecting a principal-agent relationship. It does

not, as Frost argues, require agents to assume everything the principal communicates is wrong or require agents to communicate directly with the principal's customer.

Frost also argues that even if they owed Ronnfeldt Farms a duty, no breach of the standard of care occurred. But in order to determine whether appropriate care was exercised, *the fact finder* must assess the foreseeable risk at the time of the defendant's alleged negligence. See *Perry v. Buchanan*, 31 Neb. App. 715, 988 N.W.2d 537 (2023) (petition for further review denied May 23, 2023). Courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter. *Id.* We find that reasonable minds could differ on whether Frost exercised appropriate care, and as such, we leave this issue to be resolved by a fact finder.

Having found a general duty of reasonable care exists, we do not reach Ronnfeldt Farms' argument that a no-duty determination must be based upon certain legislative facts.

### (b) Ronnfeldt Farms Cannot Revive or Revisit Its Subcontractor Theory

In arguing its independent negligence claim, Ronnfeldt Farms proposes that if Frost was a subcontractor, they would have owed Ronnfeldt Farms a modified duty to disregard obviously dangerous instructions with respect to biosecurity practices. However, the record clearly demonstrates that Ronnfeldt Farms abandoned its former position that Frost was a subcontractor to Ronnfeldt Farms. At the hearing on the motion for summary judgment, counsel for Ronnfeldt Farms stated: "When we originally filed this complaint in this matter, I believe that there was . . . an allegation that [Frost] was a subcontractor to . . . Arp. As we have gone through discovery in this case, it's apparent that that's not the case." Ronnfeldt Farms then proceeded on its joint venture theory.

[20] As stated above, parties are permitted to plead alternative theories of recovery unless the theories are so inconsistent that a party cannot logically choose one without renouncing

the other. See *Thurston v. Nelson*, 21 Neb. App. 740, 842 N.W.2d 631 (2014). However, a party may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021).

When Ronnfeldt Farms abandoned its theory that Frost was a subcontractor, it essentially retracted this issue from its pleadings and our purview. Further, arguing that Frost is not a subcontractor for one theory and then arguing Frost is a subcontractor for another is inconsistent to the point that Ronnfeldt Farms cannot logically choose one theory without renouncing the other. Thus, we do not consider the subcontractor theory or any negligence-based duties Ronnfeldt Farms asserts would arise from a subcontractor relationship.

In conclusion, we find that Frost owed Ronnfeldt Farms a general duty of care. Summary judgment was, therefore, inappropriate on Ronnfeldt Farms' limited claim of independent negligence against Frost. What standard of care was required of Frost and whether Frost's actions or inactions constituted a breach of that standard are questions for the finder of fact.

## 5. FROST'S CROSS-APPEAL

On cross-appeal, Frost assigns and argues that the district court erred when it declined to find that as a matter of law, Ronnfeldt Farms cannot show proximate causation. Frost also assigns and argues that Ronnfeldt Farms' failure to preserve certain evidence warrants an inference that Ronnfeldt Farms cannot demonstrate causation.

The district court did not reach the issue of causation or the issue of evidence preservation in its order granting summary judgment. Based on the conclusions the court made, it was not necessary for the court to consider these issues. We decline to consider these issues that were not addressed by the district court. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Hinson v. Forehead*, 30 Neb. App. 55, 965 N.W.2d 793 (2021).

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment as to Ronnfeldt Farms' breach of contract and negligence claims based on a theory that Frost was engaged in a joint venture with Arp. Frost cannot be held liable for Arp's alleged breach of contract or alleged negligent behavior. However, we find that the district court erred by finding that Frost did not have a general duty of care with respect to the work they performed at Ronnfeldt Farms and in granting summary judgment to Frost based on that finding. Therefore, we reverse the portion of the court's order granting summary judgment on Ronnfeldt Farms' independent negligence claim against Frost and remand the cause for further consideration of the remaining issues raised in the motion for summary judgment related to Ronnfeldt Farms' independent negligence claim.

Affirmed in part, and in part reversed and remanded for further proceedings.